CHANCERY.    **Pearson & Anderson, &c. *vs* T. Rock-hill & Co.; same *vs* Tiffany, Ward & Co.; same *vs* Nelson, Holbrook & Co.**

*Case* 56.         APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Fraudulent conveyances. Trustees and Trusts.*

*October* 31.     JUDGE MARSHALL delivered the opinion of the Court.

THIS is an appeal from a decree rendered in four consolidated suits, (one of which has been compromised,) whereby a deed of trust from Pearson & Anderson to J. Anderson, J. Marshall and E. M. Taylor, dated 25th of September, 1838, was set aside as fraudulent and void against creditors, and the Trustees, jointly, with Pearson & Anderson, the debtors, were decreed to pay to the creditors who assailed the deed, the full amount of their debts, making a sum in the aggregate exceeding $10,000.

Without stopping to inquire what circumstances might or might not justify such a decree against persons who were no otherwise concerned with the affairs of the real creditors and debtors than by having become Trustees in a deed professing to secure all debts due by the grantors, we shall proceed, very briefly, to consider the question, whether this deed should be regarded as fraudulent either in fact or in law.

The deed of trust contrasted with the deed in the case of *Vernon vs Morton & Smith*, (8 *Dana*, 247.)

The deed is, in substance, similar to that which is sustained in the case of *Vernon, &c.* vs *Morton & Smith*, (8 *Dana*, 247,) except, 1st, that it divides the debts into two classes, giving preference to the first class. 2d. It puts the debts of the second class, whether due by note or account, on the same footing, and directs the principal of the notes to be paid before any interest is paid thereon; and, 3d. That the debts to be secured are all stated in two schedules appended to the deed, the first containing the preferred debts, and the other the remaining debts, for payment of which, so far as the holders of them should accept the deed within the ninety days, the funds remaining after payment of the first class are directed to be rateably appropriated. A third schedule annexed to the

deed contains a list of the notes and accounts transferred to the Trustees. The debts in schedule No. 1, amount, in the aggregate, to $40,333 93, of which about $30,000 were debts to the Banks in Louisville. Those in schedule No. 2, amount to $36,778 62, held by about twenty-five individuals. The assets listed in schedule No. 3, consisting of notes and accounts, settled and unsettled, and one horse, saddle and bridle, amount to something over $112,000. The deed conveys the whole property of the firm which included also the entire property of each partner except a small quantity of household furniture in the use of one of them, of which he exhibits a schedule in response to a call of the bill, and declares his readiness to give it up to his creditors if required. It conveys all of their assets for the purpose of paying all their debts. It makes it the duty of the Trustees to collect and apply the assets with all speed, and gives them the necessary powers of receiving, arranging, securing and compounding, and of appointing Attorneys, Agents, &c. providing, of course, for the expense thereof, and requires them to give timely notice to the creditors, among such of whom as signify, within ninety days, their acceptance of the provisions of the deed, the distribution is to be made.

The principal distinction between this deed and that which was before the Court in *Vernon, &c.* vs *Morton, &c.* is, that on the face of this deed a preference is given to some over others of the debts intended to be secured. But the right of a debtor to prefer some of his creditors, even by subjecting his whole property to their debt, without providing at all for others, if he do it in good faith, and not with a fraudulent view unjustly to hinder other creditors, and if the property thus conveyed be not disproportioned to the debts preferred is undoubted, and is recognized in the case of *Byrd* vs *Bradley,* (2 *B. Mon-* 239,) much more can he make such a preference among his creditors when he conveys all of his property for the security and payment of all his debts; and there is no obstruction to this right, if it be exercised in good faith for the payment of all his debts without delay, unless by reason of an actual lien his absolute dominion over his property is restricted: (8 *Dana*, 251.) The validity of

The right of a debtor to prefer some of his creditors to others, even by subjecting the whole of his property to the payment of his debts by deed, is unquestionable, provided the value of the property be not disproportioned to the debts intended to be secured, and be not conveyed with the fraudulent design to hinder or delay other creditors: (2 *Ben., Mon.* 239.)

PEARSON & AN-
DERSON, &c.
vs
ROCKHILL & Co.

such an arrangement, properly executed in point of form, and intended really to secure all the debts, cannot, as we think, be questioned on the mere ground of the preference given to some of the debts, even if that preference were not accounted for. But the schedule No. 1, annexed to this deed, containing a list of the preferred debts, states, that they are preferred, "being such as J. & J. W. Anderson are bound to pay;" among these debts are those owing to the three Banks in Louisville, to the amount of upwards of $29,000, on all of which the defendants, in their answers to the bill, say J. & J. W. Anderson were securities or endorsers; and as to a large part of which there is proof that they were securities or endorsers; and as to the whole, they are proved to have been so by the answers of Pearson and J. Anderson, the Trustee, taken on interrogatories before the Master; and there is nothing in the record to cast a doubt either upon this fact, or upon the fact that they were also bound for the debt to De Wolf, amounting to over $6000, contained in schedule No. 1, and for which they are, in the caption therof, stated to be bound. Nor is there any thing in the record to render it doubtful, that the debts stated in that schedule to be payable to J. & J. W. Anderson, amounting to over $4000, were in fact so payable, subject to a set-off in the larger debt from them to Pearson & Anderson, mentioned in schedule No. 3. As J. & J. W. Anderson were entitled, against any general creditor, to set-off their claim of over $4000 against as much of their notes for over $19,000, held by Pearson & Anderson, there was an evident propriety, as the credit was not actually given, that their right should be preserved and made manifest by giving their claim the preference; and the fact of the set-off not having been actually made, but the two items being both preserved in their original form of debt and credit, speaks rather for than against the deed. Then as to the other debts in schedule No. 1, there was an apparrent propriety, which a Court of Equity will be very far from discountenancing, in preferring those debts in which Pearson & Anderson had securities bound with them, who had favored them in that way without prospect of gain, before creditors who had become so by

sales in which they had made a profit, and most of whom might find some remuneration for delay, not only in that profit, but also in the interest on their debts; for although the deed requires the principal to be paid before the interest or debts in schedule No. 2, as a means of insuring equality to simple contract debts, it does not deny the interest if there should be more than enough to pay the entire principal of all the debts. But, further, with regard to the debts in which J. & J. W. Anderson were bound, and especially the debts to the Banks, the deed is made expressly to secure the debts, and not merely to secure particular persons as creditors; and J. & J. W. Anderson being bound for those debts, and being, as proved, in good standing, and as must be presumed, able to pay, the deed must be regarded as having been especially made for their security; and indeed it is stated by J. Anderson and by Pearson to have been so made and to have been procured by their earnest solicitation. It was to save themselves that J. & J. W. Anderson, without other apparent necessity or motive, purchased out the entire stock of goods of Pearson & Anderson for about $19,-000, for which they execute their notes; and they had a right to require that their notes should be secured to the liquidation of their own claims, and that they, with the other means of Pearson & Anderson, should be secured to their indemnity against the large liabilities which they were under for that firm.

They had a right to take the stock of goods at fair prices, for these purposes; and they had a right to secure themselves to the full extent of their danger, out of the assets of Pearson & Anderson, though there were actions pending against them when they made the deed of trust for that purpose. No lien had been created, and the imminency of the danger to be apprehended from the creditors, who being about to obtain judgments, on which the executions must be returned *"nulla bona,"* would, by attachment bills, tie up the debts due to Pearson & Anderson, and prevent, to an indefinite amount, the application of those which were most, if not alone available to meet the liabilities of their securities, was itself a pressing and justifiable motive for their seeking and for

A creditor has a right to purchase the property of his debtor at fair prices to secure his debt, and the danger of other creditors taking the property is a justifiable motive in the purchaser to buy to secure himself: *Ford* vs *Williams, Thompson* vs *Drake,* (3 *Monroe.*)

their principal's desiring such an arrangement as would secure those debts for which they were liable: *Ford* vs *Williams*, (3 *B. Monroe*, 550,) and *Thompson* vs *Drake's heirs*, (*Ib.* 565,) and the case before cited. J. & J. W. Anderson did, in effect, represent the entire debt secured in schedule No. 1; and as the sureties of an embarrassed firm, who had not the means of meeting those debts when due, and who were sued by other creditors, they had a right to occupy, and did in effect occupy the place of the creditors, to whom they were bound, in obtaining security for these debts. And the fact that they pressed for the execution of the deed, or that they merely assented to it before its execution, as evidenced by J. Anderson's becoming a Trustee, though it would be doing violence to every rational presumption arising on the facts, to suppose that they were merely passive, places the deed on the same footing as if the actual creditors, to the amount of the debts in schedule No. 1, had thus acted. In acting for their own security, they acted, and had a right to act for the creditors for whom they were bound, and who, by not protesting against the appropriation made of the assets of the principal debtors, for the benefit of the sureties, did in effect assent thereto, as far as any assent on their part was necessary.

The deed was not the mere voluntary act of the grantors, without the solicitation or assent of creditors. For J. & J. W. Anderson, representing the entire preferred debt, were solicitous for its execution, and one of them executed it as Trustee. It was not made a secret—for not only was it spread upon the records with its schedules, within twelve days from its date, and before any judgment against the grantors, but it was known of before its execution, to those most deeply interested; and of the postponed creditors, (all of whom, with the exception of one having a very inconsiderable claim, were residents of distant States.) Bowles, representing some of them, was consulted about it before its execution, and informed of its execution afterwards; the agent of the complainants, Rockhill & Co. was told by Pearson & Anderson, on presenting the claim before suit brought, that if suit was brought, they would have to make an assignment, which

they deemed to be their duty, in order to secure their sureties in Bank. And that they had made an assignment, was generally known in Louisville, about the time it was done. It appears too, that notice, in time to have received answers within the ninety days, was attempted to be given and was supposed to have been given to the postponed creditors, and was, in fact, given to those who complain in these suits, as well as to others, and probably to all that could be found.

PEARSON & ANDERSON, &c.
vs
ROCKHILL & Co.

The deed did not deprive the postponed creditors of all right in the assets transferred, but only preferred others, who might be equitably preferred. It did not, on its face, secure to the grantors, and it has not, in the administration of it, secured to them the enjoyment or avails of the property conveyed, in any sense in which possession is to be regarded as a badge of fraud; for this is property which is not enjoyed by the mere possession of it. And though Pearson was employed as agent to collect the debts, and received a compensation not more than equivalent to his very arduous services, yet this circumstance, as decided in the case of *Vernon, &c.* vs *Morton, &c.* is not inconsistent with the utmost good faith. And as it appears in this case, that the debts to be collected were scattered over seven States, and that it was important, as far as possible, to see the debtors; and that Pearson rode several thousand miles in the performance of his duties as agent, we think the employment of Pearson throws not the slightest suspicion on the fairness of the deed. The circumstances also account for the amount of the expenses incurred; and the fact that when the account was taken by the Master, moneys had been collected, including the entire debts of J. & J. W. Anderson, sufficient to discharge the whole of the preferred debts, which was done, leaving a balance of several thousand dollars for the second class of debts, together with the fact that not one cent of the funds assigned appears to have gone to the personal use of either of the grantors, beyond the expenses properly incurred in the business of the trust, tends to confirm the honesty of the deed and of the administration of the duties enjoined by it.

It is not inconsistent with good faith for a Trustee to employ the grantor in a deed of trust, made for the benefit of creditors, at a fair compensation, to collect debts, &c.

PEARSON & AN-
DERSON, &c.
*vs*
ROCKHILL & Co.

Because a deed of trust provides for the payment of all creditors of a particular class, who shall assent to the deed in a specified time, it is not therefore fraudulent.

The deed, it should be added, requires no release from the creditors as a condition of their receiving the benefit of its provisions; nor was any thing of the sort required by the Trustees. The only burthen imposed is that which places specialties on the footing of simple contracts, until the entire principal should be paid; and although the limitation of ninety days for them to come in and consent to the deed, was not absolutely necessary for enabling the Trustees to make the *pro rata* distribution among the creditors of the second class, and although we think it might be more proper, and especially in cases where the assets put in trust might probably pay all or nearly all of the debts, to insert a provision by which creditors who shall not have actually refused, might be allowed to come in at any time, receiving only the same per cent. upon their debts, in each subsequent distribution, which others should receive at the same time, and to be postponed only as to the proportions previously distributed; yet as a similar provision to that in the present deed is not unusual, and was contained in the deed already referred to, which was sustained by this Court, in *Vernon, &c.* vs *Morton, &c.* we think the objection is not entitled to any weight, especially as urged by those who had ample opportunity to accept within the ninety days; nor do we suppose that the provision, as to the mode of paying specialties, should have any decisive influence. It does not, in our opinion, tend to establish a fraudulent intent in making the deed, nor does it make it fraudulent in law, since the simple contract creditor might have been absolutely preferred.

Some other circumstances outside of the deed, which have been urged as objections, might be noticed, but we deem it unnecessary to do so. They are susceptible of explanation, and were explained by the parties in a manner which is entirely consistent with the known facts and with the fairness of the transaction. And upon the whole case, we feel convinced that the deed of trust and assignment, was solicited and accepted by J. & J. W. Anderson in good faith, for their own security, and that it was made by Pearson & Anderson in good faith, for the security and payment of the preferred creditors first, and then of all of their creditors. And so far as appears, their

PEARSON & AN-
DERSON, &C.
vs
ROCKHILL & Co.

failure to make such a deed, though it might have left their assets, or a portion of them, accessible to the attachments of their most active creditors, would yet have resulted in producing more confusion, more contest, more inequality, and probably greater delay than are or probably will be the consequence of the course actually pursued, which, by keeping their scattered resources under one efficient direction, has probably caused them to be more speedily realized and applied to the payment of their debts than they would otherwise have been.

We conclude, therefore, upon the whole case, that the deed of trust is valid, and was and is entitled to its full operation, so far as the preferred debts are concerned, and also, so far as the other debts have been brought within its provisions by the accession of the holders to the deed; and that the complainants in these several suits, having absolutely rejected and attempted to overthrow it, must, to this extent, be postponed.

Wherefore, the decree in each case is reversed, and the cause remanded, with instructions to dismiss so much of the bill and claim of the several complainants, as seeks to invalidate the said deed on the ground of fraud, and to hold the Trustees or either of them liable for their acceptance of said deed, and of the assignment therein made, or to subject particular debts of Pearson & Anderson to the satisfaction of their respective demands, in violation of the deed, with the entire costs of the proceedings in relation to said several matters: but to retain the said bills, should the complainants desire it, with a view to the ultimate appropriation of the remnant of the assigned *choses in action* or their proceeds, to the satisfaction of their demands, for which purpose the Chancellor will, of course, have power and control over the Trustees and the trust, for the purpose of ascertaining the debts which have been brought within the provisions of the deed; of expediting the fulfilment of the trust; of calling for an account thereof from time to time; and finally, after the satisfaction of the debts which are entitled to the provisions of the deed, to compel payment of any such money, the proceeds of the assets held in trust, as may remain, or to cause such of said assets as may remain, to be sub-

jected to the demand of the several complainants, but not to affect the compromise above referred to, nor the claim of any actual creditor who may have come in for the benefit of the deed, within ninety days after its date, or who has heretofore been recognized by the acting Trustee as entitled thereto.

*Duncan, Fry & Page and Pirtle* for appellants: *Loughborough* for appellees.