## BEBB *v.* PRESTON, Garnishee.

An order discharging a garnishee, is such a judgment as may be appealed from.

Where an agreement recited that H. was indebted to certain persons, naming them, and specifying the amount of indebtedness to each, and that P. was about to commence legal proceedings against H. to collect said claims; and then went on to deliver to said P., attorney for claimants, for the consideration and purposes aforesaid, a certain stock of goods now in the store of H., and to authorize said P. to sell the same at public outcry, or vendue, for the highest price the same will bring, on the following terms: for all sums over $25.00, six months credit, with security, at ten per cent. interest; for a less sum than $25.00, money down; and where P. agreed on his part, after paying all costs and charges attending the sale, together with the payment of the claims mentioned in the agreement, to account to said H. for the residue of the purchase money received for said goods upon the sale, which agreement was signed by H. and P.; *Held*, That the agreement was an assignment only.

And where P. was garnished by a creditor of H.'s, not provided for in the agreement, and in his answer, after denying that he had any property, money or credits of said H. in his possession, or under his control, or that he was indebted to said H., went on to show that what property he had received, was received under the said agreement, and what disposition had been made of the property, from which it appeared that a portion of the proceeds of the property was still in the hands of the garnishee, which answer was denied by the plaintiff; and where, there being no evidence before the jury other than the answer of the garnishee, the attorney for the plaintiff in the garnishee process, claimed the right to address the jury, which was refused by the court, the court holding the only issue to be, the truth or falsity of the answer, and that there was no evidence to contradict it before the jury; *Held*, That the ruling of the court was erroneous.

The garnishee is not compelled to answer the general questions laid down in the statute, categorically, but may go on and state facts and circumstances, and leave the question of his liability to the court.

Where, notwithstanding the general denial of the garnishee, of having property of, or being indebted to, the attachment defendant, the garnishee proceeds to show the circumstances under which he does, in fact, hold property of such defendant, the legal question is, whether he *so* holds it as to be liable to the process? And in his statement of the whole facts, he may show that he is liable, notwithstanding the general denial.

While it is probably true, that the truth or falsity of the answer, is the only question for the jury, yet it is not the truth or falsity of any *one* proposition, nor of any *part* of the answer, in particular, but the question is as to the truth or falsity of the leading *ultimate* denial, of being indebted to, or having no property of, defendant in his hands.

The detail of circumstances set forth in the answer, may all be true, and yet the general denial be legally untrue; for notwithstanding the truth of *those* facts, he may have property in his hands which is liable, and the opposite party may rely upon those very facts to show the liability of the garnishee. Where a garnishee claimed to hold property under an assignment for the benefit of certain creditors, naming them, and the plaintiff asked the court to instruct the jury, "that if the jury believe from the evidence, that the property mentioned in the assignment to the garnishee, embraced substantially all the property of the principal debtor, not exempt from execution, said assignment is void, and of no effect, for the reason that it does not provide for the payment of all the creditors of the party making it, in proportion to the amount of their respective claims," which was refused by the court, because there was no evidence to which it would apply, the only evidence before the jury being the answer of the garnishee; *Held*, That the answer of the garnishee being evidence, and the counsel for the plaintiff having the right to address the jury on the question of holding property, and to show from such answer itself, that the garnishee did hold property of the principal debtor, the instruction asked by the plaintiff should have been given.

*Appeal from the Linn District Court.*

BEBB commenced suit in the District Court of Linn county, by attachment, against Hathaway & Parkhurst, former partners, and garnished Isaac M. Preston, who was required to appear at the next term of said court, and answer interrogatories. At the succeeding term, judgment was rendered against Hathaway & Parkhurst, for the sum of $890.47, and the answer of Preston, as garnishee, was taken. In the answer, Preston denies, that he is in any manner indebted to said defendants, or that he has in his possession, or under his control, any money, or property of any kind belonging to said defendants; and then goes on to state the following facts: That on the 3d day of January, 1854, Hathaway executed certain bills of sale on the entire stock of goods then owned by him, and being in his store at Kingston, to secure certain creditors, naming them, and the sum due to each, which were duly recorded; that on the 12th of the same month, Preston, as attorney for said creditors, with the consent of said Hathaway, and by virtue of said bills of sale, took possession of said stock of goods, and sold the same; that the sale of said goods amounted, in the aggregate, to the

sum of $2,595.31; that the expenses attending the sale, amounted to the sum of $303.90; that Preston claims for his services as attorney as aforesaid, in, and about the conversion of said goods into money, ten per cent. on the whole amount, making the sum of $259.53; that after the sale of said goods, on the 27th of January, 1854, he settled with Hathaway for the sale of said goods, and gave him credit for the entire proceeds thereof, deducting the expenses aforesaid; that said credits were applied, first, to the satisfaction of said several bills of sale, and the residue of the proceeds arising from the sale of said goods, was applied as a credit on the claim of Warner, Clark & Kayler, $360.51; J. B. Daggett, $27.67; J. Spurr, $50.00; which said several claims were in the hands of said Preston for collection, against said Hathaway, at the time of the sale of said goods, and settlement with Hathaway; and that he is not accountable to said Hathaway, or to Hathaway & Parkhurst, for any money or property whatever.

The answer further states, that Preston when he took possession of the goods, entered into a written agreement with said Hathaway in relation to said goods, a copy of which is appended to the answer; that said Hathaway received the credit on said claims, as so much money received by Preston, as attorney for the persons named in the agreement; that immediately after the settlement with Hathaway, he notified the persons named in said agreement of said settlement, and the amount received from Hathaway for them; that at the time of the service of the writ of garnishment, Preston held in his hands, of the proceeds of the sale of said goods, the sum of $1,176.15, of which sum $921.25, was in notes; that he took the notes for the goods sold on credit, in the name of I. M. Preston, or bearer, for the reason that he agreed to be responsible for any balance for said goods to said Hathaway, after the payment of said claims; that he had no interest in the sale of said goods, nor did he act in any other capacity than that of attorney for the persons named in the agreement, and the notes taken in the name of Preston, were taken for the purpose and benefit of the persons named in said agree-

ment; that he received the goods in payment of said claims; that he received for the sale of said goods, the sum of $587.03 in cash, and the residue in notes; that there is now in his hands the amount above stated; and that all that has been paid over, has been paid according to the terms of said agreement.

The copy of the agreement, appended to the answer of the garnishee, and under which he received the goods, reads as follows:

"·Whereas, I. N. Preston, attorney for the persons hereinafter named, has now in his hands for collection the following demands against Annis Hathaway, of Kingston, in the county of Linn, in the state of Iowa, in favor of the persons hereinafter named, that is to say:

| | |
|---|---:|
| One demand or claim in favor of R. D. Adams & Co. of Chicago, Illinois, for the sum of | $408.59 |
| One drawn in favor of J. P. Crane & Co. for the sum of | 493.57 |
| One drawn in favor of Ward, Daggett & Co. for the sum of | 697.21 |
| One drawn in favor of Warren, Clark & Kayler, for the sum of | 360.51 |
| One drawn in favor of J. B. Daggett, for the sum of | 27.67 |
| One drawn in favor of J. Spurr, for the sum of | 50.00 |
| Amounting in all, to the sum of | $2,037.55 |

" And, whereas, the said Preston is about to commence legal proceedings against said Hathaway, to collect the said several sums of money, which said sums of money are justly due the several persons and firms above named: And whereas, the three first-named claims are secured by bills of sale on goods now in the store: Now, therefore, know ye, that I, Annis Hathaway, for the purpose of paying said bills of sale, and said several sums of money due as aforesaid, do hereby deliver to said Isaac M. Preston, attorney for claimants, for the consideration and purposes aforesaid, the stock of goods now in the store occupied by me in Kingston, aforesaid, in-

cluding the entire stock of goods, wares and merchandise, now in the store at Kingston aforesaid, and do hereby deliver the possession of said stock of goods and merchandise, to said Isaac M. Preston, attorney as aforesaid, and do hereby authorize said Preston to sell the same at public outcry or vendue, for the highest price the same will bring, on the following terms : for all sums over $25.00, six months credit, with security, at ten per cent. interest : for a less sum than $25.00, money down ; and that the said Isaac M. Preston, after paying all costs and charges attending the sale of said goods, together with the payment of said several demands due the several persons and firms named aforesaid, does hereby agree to account to the said Hathaway, for the residue of the purchase money received for said goods upon the sale made as aforesaid.   Witness our hands, this 12th day of January, 1855.                                         ANNIS HATHAWAY.
                              I. M. PRESTON,
          *Attest :*                      *Attorney for claimants.*"
DAVID N. KINEY.

And appended to the agreement, was a memorandum, signed " I. M. Preston, Attorney for claimants," which was as follows: " In addition to the above claims, to be secured as aforesaid, there is one claim in favor of Fitch & Hewes, for the sum of $449.15 ; also, one in favor of John Sears, jr., for $642.78."

To this answer of the garnishee, the plaintiff replied, alleging that the garnishee is indebted to said Hathaway & Parkhurst, or to the said Hathaway ; that he does owe them, or one of them, money or property, which is not yet due ; and that said defendant has in his possession, or under his control, property, rights, or credits, of the said Hathaway ; and also denying the answer, and each allegation thereof, to the first interrogatory answered.   To this replication, there was a general denial, by way of rejoinder.   The cause then coming on to a hearing before a jury, the plaintiff offered D. N. McIntosh as a witness, for the purpose of proving that the goods described in the agreement, embraced all the property

Bebb v. Preston, garnishee.

of Hathaway & Parkhurst, and of Hathaway, not exempt from execution; and for the purpose of proving that there were other creditors not provided for in said agreement, offered in evidence certain notes and judgments against said Hathaway & Parkhurst, all of which were objected to by defendant, and rejected by the court, to which the plaintiff excepted.    There being no evidence before the jury, other than the answer of the garnishee, the plaintiff then asked the court to instruct the jury as follows:

"That if the jury believe from the evidence, that the property mentioned and described in the assignment to Preston, embraced substantially all the property of said Hathaway, not exempt from execution, said assignment is void, and of no effect:

"1. Because it does not provide for the payment of all the creditors of the party making it, in proportion to the amount of their respective claims;

"2. Because the said assignment authorized a sale of the assigned property on credit.

"3. Because the said assignment provides, that the surplus of the proceeds of the sale of said property shall be paid over to the said Hathaway.

"4. Because no schedule is attached to said assignment, showing the amount and nature of the property assigned;"—which instruction the court refused to give, and the plaintiff excepted.    The attorneys for the plaintiff then proposed to address the jury, which was refused by the court, the court holding, that the only question for the jury to try, was the truth or falsity of the answer, and instructing the jury to find for the defendant, if the answer was true, and for plaintiff, if false—to all which rulings the plaintiff excepted.    The jury rendered a verdict for the defendant, upon which judgment was rendered, discharging the garnishee, with costs.    From this judgment the plaintiff appeals, and in this court assigns the following errors:

1. The court erred in ruling from the jury, the evidence offered on the part of the plaintiff.

2. The court erred in refusing to allow the attorneys of the plaintiff to address the jury.

3. The court erred in refusing to give the instructions asked for by the plaintiff.

4. The court erred in refusing to allow the plaintiff to prove, that the property embraced in the agreement between Preston and Hathaway, was all the property of said Hathaway & Parkhurst, and of said Hathaway, not exempt from execution. And in this court, the defendant moves to dismiss the appeal, for the reason that the judgment of the court below, is not such a judgment as can be appealed from.

*W. Penn. Clarke*, for the appellant.

*I. M. Preston, pro se.*

WOODWARD, J.(1)—The first matter presented, is a motion to dismiss the appeal, for the alleged reason that the judgment of the court below, is not such a judgment as warrants an appeal therefrom. The statute gives an appeal from final judgments and decisions of the District Court, "as well in case of civil actions, properly so called, as in proceedings of a special or independent character." If an appeal does not lie from a judgment discharging a garnishee, neither does it lie from one charging him. The court would be very reluctant to hold, that there was no appeal for a garnishee, from whatever judgment of the District Court; and it is at least doubtful, whether the party would, in a reverse case, take the ground implied in this motion. Under the provisions of the statute, there has arisen a case between this plaintiff and the garnishee, as important as that between the plaintiff and defendant. The amount involved is no less than twenty-five hundred dollars, and there is no

(1) ISBELL, J., having been of counsel, took no part in the decision of this cause.

limit to the amount which may be involved in a like pro-
ceeding, and the garnishee's *own* interest may be at stake, as
well as that of others.   This proceeding is well adapted, not
only to inquire into indebtedness, but to investigate fraud
or concealment in the transfer of personal property, and in
assignments for the benefit of creditors.   It is a sort of bill
in equity, but still more penetrating.   The garnishee may
not only be asked the general questions suggested by the
statute, but any others, tending to reveal the true character
and consideration of the transaction. , Of course, it is not in-
tended to say that *no* question or inquiry will be improper,
but the above remark is made as true in general.   It is said
this is only a part of the process of attachment.   That is
true in this case.   But it may arise under an execution also,
and then it becomes more independent of the mere proceed-
ings in the particular action.   It is true, it must have con-
nection with an action commenced, or judgment recovered,
and then it becomes almost an action of itself.   It is such in
substance, though not in form.   If it must have a name, we
will call it a special proceeding.   But, whatever we call it,
it cannot be admitted that the law does not intend to give
an appeal to the garnishee.   And, if he has one, the plaintiff
has.   *Johnson & Stevens* v. *Butler, ante,* 459.

We pass to the principal part of the case.   The answer of
Preston, the garnishee, does not set out the bills of sale (as
they are called) made to Adams, Crane, and Daggett; and,
in this state of the answer, it cannot be seen whether they
were absolute bills of sale, *in payment* of their debts, or
assignments to raise the means to pay them.   Therefore, the
question is in relation to the balance of the property or fund,
after their payment.   It is manifest that the instrument
made to Preston, was an assignment only. .It recites the
indebtedness to various persons, and that for the purpose of
paying them, Hathaway *delivers* the stock of goods in the
store occupied by him, and authorizes Preston to sell them
at public auction, allowing him to give credit on all sums
over twenty-five dollars, and requiring him to account to
Hathaway, for the *remainder of the proceeds* of the sale, after

paying the debts and expenses. This stock of goods is placed in the garnishee's hands, *in gross*. Portions are not set apart for the several creditors. And it is apparent that they were not taken in payment. In this state of things, the garnishee answers, that he has no property, rights, or credits of the defendants in his hands, but proceeds to make a statement, and to answer interrogatories, in relation to this transaction, and shows the above assignment to himself, for the payment of the debts.

The Code, section 1872, authorizes the plaintiff to controvert any facts contained in the answer and specified by him, and issue being thereupon joined, may be tried in the usual manner. And by section 977, it is enacted, that no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors of the assignor, shall be valid, unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims. The plaintiff (intending it under the above sections) alleged that the assignment to Preston embraced all the property of the defendant not exempt from execution, and was made with intent to hinder and delay creditors, and was fraudulent in law and in fact as against said creditors. After demurrer, and motion for more specific statement, the plaintiff avers, that the garnishee has in his possession, or under his control, property, rights, or credits of the defendants, and denies the answer, and each allegation thereof, to the first interrogatory, under which the present questions arise. The plaintiff then offered evidence to show, that the assignment contained substantially all of the property of the defendants, and that they were indebted to other persons than those named in the assignment to Preston; which evidence was rejected by the court, and no other evidence was introduced. His counsel then sought to address the jury, but the court, holding the only issue to be on the truth or falsity of the garnishee's answer, and that there was no evidence against it before the jury, refused to permit them; whereupon the jury found a verdict for the garnishee. In this, we think, the court erred. The garnishee is not com-

pelled to answer the general questions categorically, but may go on and state the facts and circumstances, and leave the decision of the question to the court.    This is for his safety. It is sometimes a difficult and a complicated question, and he has a right to throw the decision of it upon the tribunal. Thus, in this case, he first denies generally having property in his hands belonging to the defendants, and then proceeds to state the circumstances under which he does, in fact, hold property of theirs; and the legal question is, whether he *so* holds it, as to be liable to the plaintiff's call.    Now, in his statement of the whole facts, we may show that he is liable, notwithstanding the general denial.    Thus, suppose he states that he holds certain property by an assignment, in relation to which he discloses such matter, as shows that it is fraudulent against creditors, or void for any cause.    These statements would override his denial of holding property; and other cases might be put, leading to the same conclusion. It is probably true, that the truth or falsity of the answer, was the only question for the jury.    But it was not the truth or falsity of any *one* proposition, necessarily, nor of any *part* of the answer in particular; but it was in relation to the leading ultimate denial, of having no goods of defendants in his hands.    It is difficult to put the position here intended to be taken, into a general proposition.    In some cases, a *single* fact or statement may be the point in issue, but then it would be one conducing to show the falsity of the general averment, that he had no property.    Here, defendant says he has no property, &c., but chooses to go on and state that he does *in fact* hold property, &c., but not so as to be liable.    Now, in his statement of the facts, we can well see, there is ground on which to base a fair argument, that he did so hold it, so as to be liable.    And this would be pertinent to the main denial.

We will try to explain a little farther.    Let us look at the position of the parties.    The garnishee says he has no property of defendants in his hands.    The plaintiff controverts this, and says he has such property.    The answer does not mean legally, that he *literally* has none; but that he has

none liable to the plaintiff in this proceeding. That this is the true meaning, is manifest, both from the legal nature of the case, and from the fact that the answer proceeds to state *how* he does, *in fact*, hold certain property of theirs; impliedly arguing that he does not hold it, *in such manner*, and *under such circumstances*, as to be chargeable on account of it. He has a right to set forth all the facts, as is here done, and leave the legal question to the tribunal, for it may often involve difficult legal inquiries. And we observe from this, that the detail of circumstances may be all true, and yet the defendant be liable ; or in other words, his general denial be legally untrue; for notwithstanding the truth of *those* facts, he may have in his hands property which is liable ; and farther, the opposite party may rely upon those very facts and statements (as in this case he does), to show the liability. Therefore, it is the truth of the general denial which, in this case, is ultimately in issue; and the counsel should have been permitted to show the error of the general denial, by the matter contained in the answer.

It follows, therefore, that the court should have given the instruction asked by the plaintiff. This was not refused upon the ground that it was not law, but because, as the court held, there was no evidence to which it would apply. The answer being evidence, and it being now held that the counsel have a right to address the jury on the question of holding property, as before explained, they have the consequent right to make out from the answer, if they can, the point of fact suggested in the instruction asked by them. This, however, we limit at present to the first ground assigned by the counsel. We do not pass upon the second, third, and fourth grounds taken in the instructions.

Other errors are assigned on the refusal of the testimony of McIntosh, the refusal of evidence, showing that the assignment contained all the property of Hathaway & Parkhurst, and that there were other creditors not named therein, and not provided for. This cause having to be decided by two only of the members of the court, and the court being

divided upon the questions last named, in the present state of the pleadings, they are not decided.

It is considered, therefore, that the judgment of the District Court be reversed, and that the cause be remanded, with directions to proceed in accordance with this opinion.