## BURROWS et al. v. LEHNDORFF.

In an action commenced by attachment, it is not error to strike from the files, so much of the answer as takes issue upon the causes alleged in the petition for the writ of attachment.

Where a party in a state of insolvency, or in contemplation of insolvency, on his own motion, executes to certain creditors, at the same time, without consultation with them, several mortgages and deeds of trust, of all his property not exempt from execution—each instrument covering the same property, and reciting that it is subject to the prior conveyance—and causes the same to be filed for record on the same day, five minutes time intervening between the filing of each, the transaction constitutes, in legal effect, a general assignment, and not being made for the benefit of all the creditors alike, without any preference of one over another, is void.

The execution of a chattel mortgage by a debtor to a creditor, upon property which is subject to prior liens of the same kind, if done by the debtor, without the knowledge or request of the creditor, and if not ac-

Burrows et al. v. Lehndorff.

cepted by him, is not such a giving of property in payment or security of the debt, as the law requires, in order to preclude an attachment.

A debtor may secure one creditor in preference to another; but if he undertakes to dispose of all his property to his creditors, at one and the same time, he must do it in such a way, as to place all his creditors upon an equality, giving them all his property to be divided between them, in proportion to their respective demands.

Where a debtor undertakes to dispose of all his property for the benefit of his creditors, giving a preference, he being insolvent, or in contemplation of insolvency, the fact that he has failed to appoint a trustee, as contemplated by law, will not render the assignment valid, as against creditors objecting to it.

Where the plaintiff, in a suit commenced by attachment, in all respects complies with the law, the presumption is that the attachment was rightfully sued out; and in an action on the attachment bond, if the party against whom the writ issued, claims that it was wrongfully issued, the burden of proof is upon him to establish that fact, by the proof of such facts and circumstances as tend to establish the truth of what he asserts

*Appeal from the Scott District Court.*

THURSDAY, APRIL 7.

AT THE time of commencing their action, plaintiffs sued out an attachment. The answer admits the correctness of plaintiffs' claim; denies so much of the petition as states the grounds for an attachment; sets up that the attachment was wrongfully sued out; and by way of set-off, claims damages for such wrongful act.

On plaintiffs' motion, so much of the answer as took issue upon the cause stated in the petition for an attachment, was stricken out. A replication was filed, denying the set-off; a trial had, and verdict f.r plaintiffs upon that issue, as also for the amount of their claim.

On the trial, it was shown that defendant, on the 16th and 17th days of January, 1857, made five chattel mortgages to secure several creditors, as follows, and for the following amounts: On the 16th, to Burrill Bros., for $1,230-10; to Evans, Chew & Co., for $403 46; to Burrows, Pret-

tyman & Dalzell, for $319 25, (covering the sum sued for); on the 17th, to J. A. LeClaire, for $696 53, and to Butz & Schaffer *et al.* for $1,037 70. And on the day last named, a deed of trust to one Sylvester, to secure several other creditors therein named, to the amount of $1,235. These instruments were made in the order stated, covered the same goods and chattels, and each recited that it was subject to those preceding. The deed of trust, in addition to the goods and chattels named, covered certain parcels of real estate. The first one was filed for record, January 17, 1857, at five o'clock and fifty minutes; the second, five minutes later, and so on in the same order, five minutes intervening between each, until all were filed.

The plaintiffs were notified on the day after its date, of the execution of said mortgage by defendant's attorney. The attachment was issued on the 28th of the same month. On that day, and previous to the commencement of the action, plaintiffs demanded payment, or the security of their claim, which was refused. The attachment was levied upon the same goods covered by the mortgages and deeds of trust.

The mortgages and deeds, included all of the goods and merchandize owned by defendant in a store-house, occupied by him. The testimony leaves it very uncertain, whether all of his property was included in said instruments—the preponderance, however, favors the conclusion that all was included. Whether he had other creditors, is not shown conclusively, but probably none but what were otherwise secured. Based upon these, and perhaps other facts, certain instructions were given, to which defendant excepted, and now assigns the giving of the same for error.

*Corbin & Dow*, for the appellant, cited Burrill on Assignments, 31 to 35, and cases there cited.

*Davison & True*, for the appellees. relied upon *Bebb* v· *Preston, Garnishee*, 3 Iowa, 326; Code, sec. 977; *Ford &*

*Rockwood* v. *Williams*, 3 Kernan, 577; *Wood et al.* v. *Lowry & Douglass*, 17 Wend., 492; *Bowen* v. *Clark et al.*, 5 Am. Law Reg., 206; *Jordan* v. *Turner*, 3 Blackf., 309; 5 Hammond, 97; 10 Johns., 451; *Sackett, Belcher & Co.* v. *Partridge & Cook*, 4 Iowa, 416.

WRIGHT, C. J.—The defendant could not claim a trial in this action, of the truth of the matters alleged as the cause for the attachment. There was no error, therefore, in striking so much of the answer, as sought to make this issue, from the files. *Sackett, Belcher & Co.* v. *Partridge & Cook*, 4 Iowa, 416; *Bowen et al.* v. *Gilkison et al.*, 7 Ib., 503. This remedy is upon the bond.

No question arises as to the claim of plaintiff, for that is admitted. The instructions given and objected to, relate to the set-off, and particularly to the effect of the chattel mortgage.

The affidavit, as a cause for the attachment, sets up that defendant had, all the time, goods, chattels, &c., not exempt from execution, which he refused to give, either in security or payment of plaintiffs' debt— the affidavit being such as is required by chapter 84 of laws of 1853, 143. The defendant, in his answer, sets up the chattel mortgage made on the 16th of January, and says that he had secured plaintiffs in their debt. He also says that the attachment was wrongfully sued out; and, in determining this, two questions seem to have been made. *First.* Whether said mortgage was not security; and, *Second.* Whether defendant had property which he could give in payment or security. It is to these questions that the instructions principally relate.

The instructions objected to may be condensed as follows: That defendant, having admitted the justice and correctness of plaintiffs' claim, and plaintiffs having made a proper allegation in their petition, sworn to the same, and filed their bond, the law presumes that the attachment was rightfully sued out; that this presumption the defendant must

reverse; that, if he failed in this, his cross-action must fail; that, if at the time plaintiffs demanded security or payment, defendant had no property to turn out, the attachment was wrongfully issued; that whether he had such property, would depend somewhat upon the construction to be given to the transaction of the defendant, in executing the mortgages and deed of trust; that the execution of a chattel mortgage by defendant to plaintiffs, upon property which was subject to prior liens of the same kind, if done by defendant, without the knowledge or request of plaintiffs, and if not accepted by them, is not such giving of property in payment or security as the law requires, in order to avoid an attachment; that if the instruments offered in evidence were executed at the same time, and constituted one transaction—were made by defendant on his own motion, and he was, at the time, insolvent—and by these instruments he conveyed all his property (which was) not exempt from execution, then such conveyances would, in law, be equivalent to an assignment, and not being made for the benefit of all his creditors alike, without any preference to one over another, would be void; that, if void, defendant could have given the property in payment or security; and that defendant might secure one creditor in preference to another; but if he undertook to dispose of all his property to his creditors, at one and the same time, he must do it in such a way as to place all his creditors upon an equality, giving them all his property to be divided between them, in proportion to their respective demands. And finally, the jury were told to inquire:

*First.* Were these instruments executed at the same time?

*Second.* In making them, did defendant consult his creditors?

*Third.* Was he insolvent at the time, and did he, by these instruments, convey all his property?

*Fourth.* Was one creditor, by such instruments, preferred to another?

Burrows et al. v. Lehndorff.

*Fifth.* If these questions were answered in the affirmative, they would disregard the mortgage to plaintiffs, unless they found that they consented and agreed to such an arrangement.

The Code provides that no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors of the assignor, shall be valid, unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims. Code, section 977. But for this provision, any debtor might make a general or partial assignment to a trustee, for the benefit of his creditors, with preferences—the said assignment being valid as against the process of such creditors, from the time of the execution of the deed, subject, of course, to any liens upon the property assigned. *Brashear* v. *West et al.,* 7 Pet., 609; *Wilkes* v. *Ferris,* 5 Johns., 335; *Cross* v. *Bryant,* 2 Scam., 37; *Hull* v. *Dennison,* 17 Vermt., 311; *Pearson* v. *Rockhill,* 4 B. Mon., 296; *Bebb* v. *Preston,* 1 Iowa, 460; *Cowles & Co.* v. *Ricketts,* 1 Ib., 582.

The primary question, and the one upon which the case turns, is, whether the transaction developed by the testimony, was a general assignment; for, if it was, it is not claimed to be valid. Whereas, if it was a sale or mortgage of a portion of defendant's property, made with the *bona fide* intention of securing one or more creditors in preference to others, it is not claimed to be *per se* invalid.

It seems to us that the questions of fact, upon which the character of the transaction was to be determined, were properly and fairly submitted to the jury for their determination, and that the conclusions of law, based upon a supposed state of facts, were correctly stated. Was the defendant insolvent? Did he make the instrument upon his own motion, and without consulting his creditors? Were they made at the same time, constituting one transaction? Was one creditor preferred over another? Did he convey all his property? These questions being answered in the affirmative, then they were to disregard the mortgage, and

properly so, for the transaction would then amount, in legal effect, to a general assignment, and would be void as against plaintiffs. The jury, by their verdict, have responded to these inquiries in the affirmative, and with their finding we have no disposition to interfere.

Upon two of the inquiries, alone, can there be any room for doubt, as to the correctness of their finding. The first relates to its being made without consultation with his creditors. We do not stop to inquire whether it would change the case, though he did consult some of his creditors, plaintiffs not being of the number, nor consenting to the arrangement. Without discussing that question, we may say that there is no reason for concluding, from the testimony, that he executed the instrument otherwise than upon his own motion. It is clearly proven that plaintiffs knew nothing of the mortgage to them, until the day after it was executed. It also appears that some of the other creditors, as well as plaintiffs, procured attachments and levied upon the same goods and merchandize, within a short time after the execution of the mortgages—a course entirely inconsistent with the supposition that they consented to the security given. Not only so, but it is very remarkable, if the creditors consented to the arrangement, that just five minutes should have intervened between the recording of each mortgage, neither more nor less. If this was in pursuance of an agreement mutually entered into between the creditors, it could have been so easily proved, that the failure to do so almost justifies the conclusion, that defendant presented them for record in the order preferred by himself, and not as agreed upon by the creditors. Under all these circumstances, we think that the jury were fully justified in finding that the creditors had no knowledge of the transaction.

The second inquiry relates to the question whether these instruments were all made at the same time, constituting one transaction. It is said that it is impossible that they could all have been made at the same time. This is true,

so far as it is intended to assert the proposition, that they could not all be made at the same instant of time. But this is not what is meant. The true meaning and intention of the court, and as it must have been understood by the jury, is well and sufficiently shown by the use of the other words—*did it constitute one transaction?* And of this there can be no reasonable doubt. Here were six in-instruments, covering some fifteen to twenty pages of paper, all acknowledged before the same officer; each one referring to those preceding; and all of them filed for record on the same day, within the same hour, and almost, indeed, at the same minute; and presented for record, too, as we hold the jury might well conclude, by the defendant. How could the jury doubt, under such circumstances, as to defendant's intention? To make it one transaction, it was not necessary that all of the creditors should have been provided for in the same instruments, for the intention of the defendant to make a general assignment, and at the same time prefer his creditors, contrary to the express prohibition of the statute, could as well be accomplished by executing separate instruments, as by executing one.

We have before stated, that these are the only questions of fact upon which there could be any doubt as to the correctness of the finding of the jury. The question whether one creditor was preferred over another, was more legitimately for the determination of the court than the jury, from a construction of the instruments themselves. It is a proposition so plain in itself, however, that no prejudice could possibly result from thus submitting it, at least, to defendant. Had the jury found otherwise than affirmatively upon it, it would have been most manifestly erroneous.

It may be suggested, that all of the instruments, except the last, were mortgages; that no trustee is named; and, therefore, the transaction could not have been intended as a general assignment, and that it should not, for this reason, be so construed. To this, it may be replied, that each

one of the five instruments, (called mortgages in the record), constitute the creditor named and secured therein, a trustee for the purpose of taking possession of the property named, upon certain conditions, and selling the same for the purpose of paying the debt named, subject always to the right conferred upon other creditors, by the prior instruments. Now, it is true, that the general assignment referred to in the Code, does imply the intervention of a trustee; but if a debtor shall undertake to dispose of all of his property for the benefit of his creditors, giving a preference, he being insolvent, or in contemplation of insolvency, it would not be rendered valid as against the creditors objecting to it, by the fact that he had failed to name and appoint a trustee, as contemplated by the law. And it is believed that what is said upon this subject, in the case of *Cowles & Co.* v. *Ricketts*, 1 Iowa, 582, will not be found to conflict with this position. The true inquiry is— the essential and important issues are—was defendant, at the time of the transfer, insolvent, or did he contemplate insolvency? Did he make a general transfer for the benefit of his creditors? And if so, then was it made for the benefit of all in proportion to the amount of their respective claims? If not, it is invalid. The fact that he appoints a trustee, seems, perhaps in most instances, to fix conclusively the character of the transaction as a general assignment. If, however, he shall do that which is prohibited by the law, in another manner, the rights of creditors are not changed.

These general remarks sufficiently dispose of the case, and lead to the conclusion that this judgment must be affirmed. Some of the instructions, taken alone, and without reference to the facts of the case, as developed by the testimony, may be subject to objection. It is never correct, however, to thus consider them. They must all be viewed together, and in connection with the case made by the record. Thus viewed, without examining them in detail, we find nothing in them, of which defendant has reason to complain.

The position of defendant, that the instructions improperly place the burthen of proof upon him, to show that the attachment was wrongfully sued out, is untenable.   In the first place, it is one of no practical importance in this case, for it is shown affirmatively, that plaintiffs did demand payment or security of their debt, before suing out their attachment, which was refused.    And they thus showed affirmatively, that they had complied with the law.   Upon the other part of the issue, that defendant had no property to give, so far as the argument drawn from the hardship of the case is concerned, there is really no more difficulty in requiring the proof to come from one party than another.

But then, we understand the rule to be, that if plaintiffs made the affidavit, filed the bond, and in all respects complied with the law in procuring their attachment, the presumption is, that it was rightfully sued out; and if defendant claims that it was wrongfully issued, the burden of proof is upon him to establish that fact.   Not that he must necessarily do it by positive testimony—as, for instance, by proving positively that plaintiffs did not demand payment or security, or that he did not refuse to pay or secure, or that he did not have property; but it may be shown by the proof of such facts and circumstances as tend to establish the truth of what he asserts.   The case is not different from ordinary ones in practice, and the same rules of evidence apply.

Whether it is proper to allow the party sued, to off-set the damages sustained by him, by reason of the wrongful suing out of the attachment, in the trial of the principal cause, seems not to have been made a question in the court below, or here.   We dispose of the case, therefore, upon the points made, without intimating an opinion as to the right to thus litigate the question of damages.

Judgment affirmed.