LAMPSON & POWERS v. ARNOLD, Garnishee.

1. **Assignment for benefit of creditors:** PREFERENCE. At common law, as settled by both the English and American authorities, a debtor in failing circumstances may dispose of his property in trust for the benefit of his creditors, and may by such conveyance, or otherwise, give preference in payment to one creditor before another.

2. —— GENERAL RULE UNDER THE STATUTE. Section 1826, Revision 1860, (Code of 1851, section 977) prohibits preferences in general assignments of property in contemplation of insolvency, but it does not limit or affect

the right of an insolvent debtor, or one contemplating insolvency, to sell or mortgage a part, or all, of his property, to one or more of his several creditors in payment or security of a particular debt or debts, though practically such sale or mortgage may defeat all creditors, other than the grantee, from collecting their demands.

3. —— PARTIAL ASSIGNMENT. There is nothing in the statute which affects the right of the creditor to make a *partial* assignment as it exists at common law.

4. —— SALE: PARTIAL AND GENERAL ASSIGNMENT. It is competent for any debtor to pay a part of his creditors in full; to secure others by a deed of trust or mortgage on his property; to make a partial assignment of still other property for the benefit of certain other creditors, with or without preferences, and afterwards make a *general* assignment of the remainder of his property for the benefit of all *pro rata*.

5. —— CONTEMPLATION OF INSOLVENCY. It cannot affect the validity of a payment made by a debtor to a creditor, that it was made when the debtor contemplated insolvency, or was *about* to execute a general assignment.

6. —— IDENTITY OF TRANSACTION. That a conveyance of real estate to one creditor in payment or security of his debt, was executed by the debtor at the same time he executed a general assignment for the benefit of his creditors, does not make the two conveyances parts of but one transaction.

7. —— GENERAL TRANSFER. Section 1826, of Revision of 1860, does not make a general *transfer* of property invalid: it relates only to *general assignments*, and uses the latter word in its technical sense.

8. Principal and agent: RATIFICATION. The ratification by a grantee of the unauthorized acts of an agent in accepting a conveyance of real estate in payment of a debt, when made before any liens in favor of other creditors attach, renders the conveyance complete and valid.

9. Assignment for benefit of creditors: FRAUD. A fraudulent intent on the part of the assignor in a general assignment for the benefit of creditors invalidates the assignment, notwithstanding the assignee was not a party to such intent.

*Appeal from Clayton District Court.*

MONDAY, JANUARY 15.

THE plaintiffs commenced their suit by attachment against Lee & Kinnard, alleging, as the ground for attach-

ment, that the defendants had disposed of their property in part with intent to defraud their creditors. The writ of attachment was served by summoning the defendant, Thomas Arnold, as garnishee. At the appearance term, the plaintiffs obtained judgment against Lee & Kinnard for the whole amount claimed, it being $421.85. At the same term, the defendant, as garnishee, filed his answer, negativing each of the statutory interrogatories; but in further answer to the third, he stated, that on the 8th day of January, 1862, the said defendants, Lee & Kinnard, assigned all their property to him as assignee, which he still held by virtue of the assignment. He annexed to his answer a copy of the assignment, with the schedules attached thereto, and also stated certain facts relating to the assignment.

The plaintiffs filed a reply to the answer of the garnishee, traversing the denials of indebtedness, &c., and averring that the assignment was made to hinder and delay creditors, and was fraudulent; that it purported to be a general assignment, but that, by private arrangement, Lee & Kinnard preferred certain of their creditors by appropriating certain property and effects in payment of their demands. The issues were tried to a jury and resulted in a verdict for the plaintiffs, and the defendant appeals.

*J. O. Crosby* and *Reuben Noble* for the appellant.

*Odell & Updegraff* for the appellees.

COLE, J. — The substantial facts proven on the trial of this case were, that on the 5th day of January, 1862, one of the firm of Lee & Kinnard, who were bankers, went to Mr. Noble, as their attorney, and informed him that they were unable to continue business much longer unless something very favorable should occur within a very few days,

and desired his advice as to the best course to pursue. Mr. Noble expressed his preference for a general assignment, but before he could determine definitely, he must know more of their condition, which he had not time then, nor for two or three days, by reason of his necessary absence, to examine. In the meantime, he requested that the firm should pay, in money or property, the amounts they owed Pearsall, Benton and the State Bank, they being severally clients of his, and in relation to which peculiar circumstances existed.

On the 6th and 7th days of January, the firm of Lee & Kinnard, in the absence of Mr. Noble, consulted his partner, Mr. Beckwith, who during those days made out schedules of the property, preparatory to the making of an assignment. He also prepared a deed for certain real property, to be executed by Lee & Kinnard to Pearsall. On the evening of the 7th, Mr. Noble having returned, and the deed being signed, was delivered to him as agent or attorney for Pearsall, and the money due Benton was paid him. The cashier of the State Bank was called in and a settlement was had, showing a balance due the State Bank of about $8,000, some $2,000 of which had been borrowed that morning, for the day. This balance was paid by Lee & Kinnard to the State Bank at that time, in money and negotiable paper. All this occurred between seven and twelve o'clock on Tuesday night, the 7th day of January.

Between twelve and two o'clock, on the morning of the 8th of January, all the necessary schedules having been theretofore prepared, the assignment was drawn, the assignee sent for to ascertain if he would accept the trust, and it was executed, delivered and accepted. There is some controversy as to the precise hours in which the various acts were done, but the above is the probable time, judging from all the evidence. There is some positive or express testi-

mony, that there was no final determination to make an assignment, until after the payment of the claims men-tioned above; but the circumstances tend to show that the intention and purpose of Lee & Kinnard, from the first, was to make the assignment.

The court instructed the jury at length, and the following portions only, of the charge, were excepted to: "3d. The essential and important inquiries in this case are: Was Lee & Kinnard insolvent, or did they contemplate insolvency at the time of the arrangement with Benton, Pearsall and the State Bank? Did they make a general transfer of their property for the benefit of their creditors? And if so, was it made for the benefit of all, in proportion to the amount of their respective claims? If not, the transaction was invalid, and your verdict should be for the plaintiffs. If you believe they were to effectuate one object, namely, the distribution of the insolvents' effects among their creditors, and this object was effected by one and the same transaction, though embodied in several instruments or transfers." The sixth, eighth and tenth instructions embody, in substance, the same general proposition, and with the ninth, which will be hereafter noticed, were the only instructions given and excepted to.

*1. Assign-ment for benefit of credit-ors: preference.* (in margin beside the paragraph beginning "The essential")

The correctness of this instruction, as well as the true rule of law applicable to the very gist of the controversy in this case, will best be ascertained by a brief examination of the law of assignments, aside from any statute, and then the extent of the change effected by the statute.

It is a well established and long settled rule in English and American law, that a debtor in failing circumstances may dispose of his property in trust for the benefit of his creditors, and may, by such conveyance or otherwise, give preference in payment to one creditor before another. 2 Kent's Com., 532; Burrill on Assignments, 108; 1 Am.

Lead. Cases, 4th ed. 1857, 56, and Hare & Wallace's notes to *Thomas* v. *Jenks*, 5 Rawle, 221; and to *Grover* v. *Wakeman*, 11 Wend., 200. The rule is based upon the acknowledged principle that a debtor owing several creditors and being unable to pay all, may pay one in preference to another; or as was well and forcibly said by Mr. Justice FORD in *Sillon* v. *Britton*, 4 Halsted (N. J.), 120, "The law contains no such principle as that a man in failing circumstances may not pay any just debt first, which will best relieve his circumstances. If, while a man retains his property in his own hands, the right of giving preferences should be denied, he would so far lose the dominion over his own that he could not pay *anybody*, because whoever he paid would receive a preference. He could only pay ratably, which is *never* incumbent till *after* he has taken the benefit of the insolvent law, or has assigned his property to trustees for the benefit of creditors, and so *put the dominion over it into other hands.* Accordingly it was decided in the case of *Hendricks* v. *Mount*, 2 Southard, 273, that "the making of such preferences *was every day done, was every day sustained in our courts of justice, and is legal.*"

And in *Blakey's Appeal*, 7 Barr, 449, COULTER, J. observes: "It is only when a man loses dominion over his property and transfers that dominion to another, that the right of creditors to a *pro rata* dividend attaches. Whilst a man retains dominion of his property, he may incumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors by payment or transfer as he chooses. And if it were not so, an individual could not get along in his business." See also, *Uhler* v. *Maulfair*, 23 Penn., 481; *Hopkins* v. *Beebe*, 26 Id., 85. And in *Wakeman* v. *Grover*, 4 Paige, 23, Chancellor WALWORTH says: "It is settled that the insolvent has the right, while his property remains in his own hands, to

apply the same to the payment of one creditor in prefer-ence to another, notwithstanding the principle of this court, that equality among creditors is equity." See also, *Cunningham* v. *Freeborn*, 11 Wend., 256; *Edgington* v. *Rogers*, 15 Texas, 188; *Kuykendall* v. *McDonald*, 15 Mo., 416; *Gasset* v. *Wilson*, 3 Fla., 235.

The right of the debtor to use, control and dispose of his property is absolute, and he is in no manner rightfully subject to the dictation of his creditors, for they have no legal right *in* his property by reason of being creditors. But when he transfers his property to another by assign-ment, without preference, the rights of his creditors attach, and then the rule that equality is equity, applies to it. Until he loses dominion over it, however, his *jus dispo-nendi* continues, and is subject alone to his will.

It is also laid down as a general rule, that in the absence of any statutory prohibition, and of a bankrupt law, a debtor may, at any time before liens have attached upon his property, make a general or partial assignment to a trustee for the benefit of his creditors, *with preferences;* which assignments will be valid, as against the process of creditors, from the time of the execution of the deed. Burrill on Assignment, 117; 2 Kent's Com., 532; 1 Am. Lead. Cases, *supra.*

It is very clear, from the foregoing principles, sustained and exemplified as they are by the authorities cited, and numerous others, that unless the right of the debtor to dis-pose of his property absolutely, or by assignment with preferences, has been limited or restrained by our statute, the theory of the instructions given is wholly without any legal basis.

We proceed, then, to examine the extent of the limita-tion upon the debtor's rights, imposed by our statute. It is provided, by the Revision, section 1826 (and was by the Code of 1851, § 977), "no general

2 — general: under the statute.

assignment of property, by an insolvent, or in contempla-. tion of insolvency for the benefit of creditors of the assignors, shall be valid, unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims."

This statute, it will be observed, does not limit or affect the right of an insolvent debtor, or one contemplating insolvency, or, indeed, any other, to sell or mortgage a part or all of his property to one or more of his many creditors, in payment or security of a particular debt or debts. And this is true, although such sale or mortgage may, practically, defeat all other creditors than the grantee, from collecting their demands. Nor does the statute prohibit or interfere with the right of any debtor, as it existed 3. —— prior to the statute, to make a *partial* assignment. partial assignment. In other words, the statute does not expressly, or by implication, extend any further, or apply to any instrument or conveyance, other than to a *general assignment*. And, therefore, it is still competent for any debtor to pay a part of his creditors in full, to secure another part by 4. —— sale; mortgage, or deed of trust, upon a part of his partial and general assignment. property, to make a partial assignment of still other property, for the benefit of certain other creditors, with or without preference, and afterwards to make a general assignment. The statute simply provides, that such general assignment shall not be valid, unless it is made for the benefit of all the creditors *pro rata*.

Accordingly it was held by this court in *Cowles & Co.* v. *Ricketts*, 1 Iowa, 582, that an absolute sale by a debtor of substantially all his property, in payment of a single debt, he having other creditors, and they being known to the transferee, was not within the statute, and that the word "assignment" had a peculiar and appropriate or technical meaning in law, and was used in that meaning in the statute. And in *Frommne* v. *Jones*, 13 Iowa, 474, it was held,

that a mortgage by an insolvent debtor of substantially all his property, to secure one of many creditors, was not within the statute, nor could it be brought within it by any proof *aliunde*. And in *Buell* v. *Buckingham & Co.*, 16 Iowa, 284, it was held, that an absolute conveyance by an insolvent corporation of all its property in payment of a single debt, leaving others unpaid, was not within the statute, and would not be held a general assignment, even in equity. The case of *Burrows et al.* v. *Lehndorff*, 8 Iowa, 96, is, perhaps, not in essential conflict with these cases, to which it must be held as subordinate.

Applying these principles and adjudications to this case, it becomes very evident that Lee & Kinnard had the right to pay their debts to Mr. Pearsall, in property, to Mr. Benton, in money, and to the State Bank in negotiable paper, and to make a general assignment of what was left for the benefit of their creditors *pro rata*. The only legitimate inquiry (aside from the question of actual fraud which is not alleged in this case) is, whether these debts were paid *before* the assignment was made, or, to use the language of the books, before they "had lost dominion over the property." It cannot affect the legality of these payments that Lee & Kinnard were insolvent or contemplated insolvency, or were *about* to make a general assignment, if, in fact, they did not make it till *after* the payments were made. Such distinct or special transfers have often been held not to be within the statute. *Vide Meredith Manufacturing Co.* v. *Smith*, 8 N. H., 348; *Low* v. *Wyman*, Id., 536; *Barker* v. *Hall*, 13 Id., 298; *Brown* v. *Foster*, 2 Metc., 152; *Henshaw* v. *Sumner*, 23 Pick., 446; *Fairbanks* v. *Haynes*, 23 Id., 323; *Bates* v. *Coe*, 10 Conn., 280; *Wounan* v. *Wolfersberger's Executors*, 19 Penn., 59.

Nor can the payments made, as shown by the evidence in this case, in any legal or just sense, be called

*5. —— contemplation of insolvency.*

a part of the same transaction or conveyance as the general assignment. The conveyance of the particular real estate to Mr. Pearsall was, and of legal necessity must be, a different transaction or conveyance from the general assignment. It was between different parties, having no special relation to each other, upon a different consideration, concerned different property, held by a different title, and related to the payment of a different and distinct debt. The fact that the two or more conveyances were made at nearly the same time has no necessary influence upon determining their identity of transaction. To illustrate, a debtor may execute at the same time two notes to different creditors for different debts, but their being executed at the same time has no necessary tendency to show them to be one and the same transaction. So, also, an absolute deed may have been given to secure a loan, and the defeasance may be executed a year or years after, and notwithstanding the difference in time of execution, they are taken and treated as one transaction and parts of the same transfer. They are so treated because they are between the same parties and relate to the same subject matter, and are based upon the same consideration. It was held in *Henshaw* v. *Sumner*, and *Brown* v. *Foster*, *supra*, that preferences given by mortgage and by the delivery to the creditor of promissory notes immediately before executing an assignment, did not avoid it. And in *Bates* v. *Coe*, 10 Conn., 280, *supra*, where a debtor, in failing circumstances and with a view to his insolvency, executed a mortgage of his estate to certain of his creditors, and afterwards *on the same day* made a general assignment of his property, *including the mortgaged premises*, in trust for all the creditors, under a statute very like ours, it was held that the mortgage and assignment were not to be deemed parts of the same transaction, and that the preference given by the former was not

*e. —*
*Identity of*
*transaction.*

within the prohibition of the statute. In the case of *Burrows et al.* v. *Lehndorff, supra*, there were several mortgages executed by the same parties, upon the same property, at the same time, and *without any knowledge on the part of the creditors;* these were filed by the grantors for record, within five minutes of each other successively, whereby priority or preference was sought to be given. The case is exceptional, rather than at variance with the rule as stated or the cases cited.

But the particular instruction under consideration is vulnerable to other objections of a less general, though, perhaps, of material character. One of the questions put to the jury is this: "Did they make a general transfer of their property for the benefit of their creditors, &c. ? " Now, the statute does not declare general *transfers* invalid, but it relates to "general *assignments,*" and uses the latter word, as held in *Cowles et al.* v. *Ricketts, supra,* in its technical sense.

<span style="font-size:small">7. —— general transfer</span>

Again, in the latter part of the instruction, the jury are charged that if they believe the instruments "were to effectuate one object, namely, the distribution of the insolvent effects, &c." Under the statute, it is very proper for an insolvent debtor to " effectuate the distribution of his effects" among his creditors; but if he does it by a general assignment, he must make it *pro rata,* or it will be invalid.

This construction of our statute is in accordance with principle, and is sustained by abundant authority, and seems necessary to effectuate its purpose and guard against injustice. Our statute is grounded upon an entirely different base from the English and our national bankrupt laws. They are upon the theory of the right of creditors to force their debtors into an assignment in bankruptcy, and hence a long list of acts of bankruptcy are prescribed, upon the doing of any one of which, by the debtors, the creditors

Lampson & Powers v. Arnold.

have the right to compel an assignment, or require him to "go into bankruptcy." While our statute is upon the theory that the debtor himself may choose as to general assignment or other method of distributing his effects, and only limits him when he chooses a general assignment. Hence, very different questions arise upon the different statutes, and the decisions under the one afford but little aid in the other. Under the English statute, the court, in cases of fraud, and in any event, secures the property of the debtor for equitable distribution among his creditors. But under our statute such is not the case. Take this case as an illustration. If these plaintiffs shall hold the property, instead of the assignee, then, because Lee & Kinnard paid these debts before they passed their property over to the assignee for the benefit of the balance of their creditors *pro rata*, one of those very creditors may assail the assignment, and, by attachment, secure the payment of his debt in full, and thereby further encroach upon or defeat the *pro rata* distribution. And this is all he can do; for the creditors who are paid in full have their pay either in cash or negotiable securities, or by conveyances which are valid and not within any statutory prohibition; for the statute only declares the general assignment invalid. Those who have received their pay are safe; but because they are paid in full they who only have a *pro rata* at first, shall have even that reduced, in order to pay another creditor in full. There are very many other phases of case, wherein the statute, unless properly construed so as to sustain general assignments and effectuate its manifest intent, would become an occasion of palpable injustice.

The ninth instruction given, is upon the supposition that Mr. Noble, who professed to act as the agent or attorney for Pearsall, must have had prior authority from Pearsall to accept the conveyance; whereas a subsequent ratification of that act, before any

8. PRINCI-
PAL AND
AGENT: rat-
ification.

steps taken by others adverse to it, would be sufficient. *Day* v. *Griffith*, 15 Iowa, 104. This instruction was therefore erroneous, and should have been refused.

The defendant also asked a series of instructions, all of which were given except the eighth, as follows: "The assignment, to be void for actual fraud, must have been made by Lee & Kinnard with intent to hinder, delay or defraud creditors; and Thomas Arnold must also have had the same purpose in view." This instruction was refused, and properly so. *Vide Ruble* v. *McDonald*, 18 Iowa, 493.

*9. ASSIGN-MENT FOR BENEFIT OF CREDITORS: fraud.*

For the error of the court in giving the instruction, as before shown, as well as for refusing to set aside the verdict and grant a new trial, the judgment of the District Court is

Reversed.