Farwell & Co. v. Howard & Co.

FARWELL & Co. v. HOWARD & Co., Garnishees.

1. Assignment for benefit of creditors: MORTGAGE. A debtor in insol-
vent circumstances may mortgage or sell all of his property to pay
or secure the debt of a single creditor; and a transfer of this kind,
if free from fraud, is not void as being in contravention of the pro-
visions of the statute in relation to general assignments.

2. Garnishment: LIABILITY OF GARNISHEE: AGENCY. Where gar-
nishees are in the possession of a stock of goods, which they claim
in their answer to hold by virtue of a transfer to them executed, for
their security, by the debtor through his authorized agent, the
authority of such agent to make the transfer will be presumed
as against a garnishor, in the absence of anything appearing to the
contrary.

3. —— LIABILITY NOT PRESUMED. The liability of a garnishee will
not be presumed but must be affirmatively established by evidence,
or clearly appear from his answer.

4. Agency: RATIFICATION. The authority of an agent to pledge the
goods of his principal may be inferred from the silence of the
principal, and his failure to complain of or disaffirm the act.

*Appeal from Des Moines District Court.*

THURSDAY, JANUARY 28.

AGENCY: GARNISHMENT: LIABILITY OF GARNISHEE, ETC.—
The plaintiffs, creditors of one Brigham Read, garnished
the defendants, Howard & Co., claiming that they had in
their possession goods belonging to Read.    Plaintiff's
suit against Read was commenced by attachment, *June*
4, 1866, and the process of garnishment served on How-
ard & Co. the same day.   In September, 1867, the gar-
nishees answered denying all liability to the plaintiff, or
that they have had possession of any property belonging
to Read except as stated.   The answer then alleges, in
substance, that Read owed them (Howard & Co.) $3,000
for goods sold and delivered to him and taken to his store
in Wilton; that, on the 29th day of *May*, 1866, Read,
by his attorney in fact (one Romulus Read) "sold and
delivered to the garnishees his entire stock of goods in
his store at Wilton, for the purpose of securing said
indebtedness; that the garnishees immediately took pos-
session thereof and removed the same to Burlington,
where they disposed of the same for the best prices they
could obtain at private sale, from time to time, as they
could find purchasers; that, by September 15, 1866, all
were disposed of, bringing $2,546, and that, after applying
the entire net proceeds of the goods (the expenses of sale
being $69), Read is still owing the garnishees about $400;
that the said sale of goods by Read to them was made
at their instance for the purpose of securing said indebt-
edness, and not to delay or defraud other creditors; that
the garnishees did not know how much, if any, Read was
indebted to others, and that their sole object in taking
said goods was to secure themselves in the payment of a
debt long past due."

The plaintiff took issue upon this answer of the garnishees, alleging, first, that the transfer from Read to the garnishees was made in contemplation of insolvency, embraced all of his property, and gave preferences, and is therefore void; second, that no legal transfer of the goods was made to the garnishees, since the party making the same had no power to do so.

The parties signed the following stipulation : first, that Brigham Read was insolvent in May, 1866; second, "that, by the chattel mortgage," below referred to, he (Brigham Read) conveyed all his property to the garnishees;" third, "that the mortgage and power of attorney were signed as they purport to be, and are genuine."

The bill of exceptions recites, that the cause was submitted upon the record, pleadings, garnishee's answer, the foregoing stipulation and the following instruments, viz., the power of attorney from Brigham Reed to Romulus Reed, and a chattel mortgage made by Romulus in the name of Brigham to Howard & Co.

The power of attorney is dated May 9, 1866, and by it Brigham empowers Romulus "for him and in his name to sell goods, collect debts and to transact all other business necessary to be transacted for him in his absence, giving to said attorney full power to do every act and thing whatsoever requisite to be done in the premises," etc.

The chattel mortgage to Howard & Co., is dated May 29, 1866, and is signed "Brigham Read, by Romulus Read, his attorney in fact." It is in the usual form, recites the indebtedness to Howard & Co. and conveys the entire stock of goods in the store of Brigham, with power to the mortgagees to take possession and sell at public or private sale and apply the proceeds to the payment of their debt, and directing the balance to be paid over to the mortgagor. This was duly acknowledged and recorded. There was no other evidence. On these facts

the District Court found in favor of the garnishees and ordered them to be discharged. From this decision the plaintiffs appeal, and the error assigned is, that the District Court should have held the garnishees liable instead of discharging them.

*Strong & Smyth* for appellants (garnishors).

*Chas. H. Phelps* for appellees (garnishees).

DILLON, Ch. J. — I. Was the mortgage to the garnishees void because it amounted to a general assignment with preferences? That Howard & Co. were *bona fide* creditors of Read is not denied. That their mortgage was taken in good faith is to be presumed, there being no evidence to the contrary. It is not even shown that they knew that Read had any other creditors. All question of actual fraud is out of the case.

*1. Assignment for benefit of creditors: mortgage.*

The instrument is, and purports to be, a mortgage and not an assignment, and it is not void as being in contravention of the statute. Rev. § 1826; Code, 1851, § 977. This statute does not prevent a debtor from mortgaging or selling all of his property to one creditor to secure or pay his debts, if the transaction be honest — free from fraud. The latest decisions of the court have settled this point, and it is sufficient to refer to them. *Lampson & Powers* v. *Arnold,* garnishee, 19 Iowa, 479; *Fromme* v. *Jones,* 13 id. 474, 480; *Hutchinson & Co.* v. *Watkins,* 17 id. 475.

II. Were the plaintiffs entitled to judgment against the garnishees? Before the garnishment process was served the garnishees were in actual possession of the goods for the purpose of securing their debt. It is to be borne in mind that this is not a proceeding by the debtor, Read, to question

*2. GARNISHMENT: liability of garnishee: agency.*

the right of Howard & Co. (the garnishees) to the possession of the goods. Though the garnishees obtained possession of the property in May, 1866, and although they did not answer until September, 1867, and the trial did not occur until January, 1868, there was no evidence that Read ever objected to the garnishee's right to the goods, or that he ever disaffirmed the act of his attorney in fact whereby Howard & Co. were authorized to and did take possession of the property.

It is true, that they were garnished by the plaintiffs in about six days after the obtaining possession of the property and after they had removed it from Wilton, in Muscatine county, to Burlington. It may be true, that if the agent had no authority whatever to transfer the goods to Howard & Co. that the ratification of his act by his principal subsequent to the date of the garnishment would not defeat rights which that process had conferred.

Yet the failure of Read at any time to complain of the act whereby the garnishees obtained possession of the goods is a fact from which the agent's authority may be inferred in the absence of any thing to the contrary being shown.

This contest is between two creditors of Read. The garnishees were in actual possession of the goods for the

3. —— liability purpose of securing their debt. They are
not presumed. sought to be charged as garnishees. They are not presumed to be liable. *Smith, T. & Co.* v. *Clarke & Henley*, 9 Iowa, 241; *Williams & Cunningham* v. *Housel*, 2 id. 154. The burden is on the plaintiffs to show the garnishee's liability, either from their answer or by taking issue thereon, and showing it by evidence. Id.

There can be no pretence that the answer of the present garnishees disclosed any liability.

In our judgment, the court below did not err in holding that such liability was not shown by the evidence.

It will be seen that the answer of the garnishees does not set up the chattel mortgage, and base their right upon that. It does not allude to this instrument; but it alleges that they are in possession of the goods for their security, by virtue of a sale and delivery to them by their debtor, Read, through his attorney in fact, Romulus Read.

It cannot be learned from the answer, that any chattel mortgage was even executed, or that the garnishees claim thereunder. Nor does the answer in any manner refer to the power of attorney, much less does it allege, that this was the only source of the power of the agent.

The garnishees do not set up this mortgage or power of attorney, but they are set up by the plaintiffs.

It is evident from the plaintiff's argument, that they base their case upon two propositions of fact, and one of

4. AGENCY: ratification.
law. The first proposition of fact is, that the garnishees' only right to the possession of the goods was that conferred by the mortgage, and the second is, that the only authority of the agent was that given by the letter of attorney. The proposition of law deduced therefrom is, that the letter of attorney did not authorize the execution of a mortgage upon the whole stock, and hence it is wholly void, conferring no rights and giving no lien even though possession be taken thereunder, and therefore the goods are wholly the property of the debtor, and the garnishees in contemplation of law hold them for him.

It may be doubted whether either of the propositions of fact above named is established by the evidence, and particularly the second one. For the mere fact that the plaintiffs produce a power of attorney does not of itself show that the agent in possession had no other authority, and power to mortgage or sell goods may be verbally conferred. That the agent had the power he assumed, viz., to pledge the goods, if necessary, to secure a cred-

itor, may be inferred from the silence of the principal, and his failure to complain of, or disaffirm the act.

Romulus Read was the agent of the debtor, in possession of the property. He claimed to have the power to sell or mortgage it to pay creditors. Whether he claimed to have any other authority than that conferred by the power of attorney does not appear. He exercised this power, and put the garnishees in possession of the property. His principal has never questioned his act or disaffirmed it. His silence supplies sufficient evidence of his acquiescence therein. The act of the agent was lawful and free from fraud. The garnishees have an equal equity with the plaintiffs, both being creditors, and have exercised superior diligence.

Under these circumstances the garnishees are not chargeable on the ground that they have no rights in the property, and that they are mere naked bailees.

Nor under these circumstances can the plaintiffs exercise a power which, ordinarily, at least, is personal to the principal, viz., to disaffirm the act of his agent.

This view makes it unnecessary to decide whether, as between the principal and the garnishees, the power " to sell goods," would include the power to mortgage.; or whether, under the power " to transact all other business," etc., authority was given to execute the chattel mortgage.

Affirmed.