W. H. Gummersell v. Charles Hanbloom (F. A. Sampson, Interpleader, Appellant, v. W. E. Shaw, Interpleader, Respondent).

**Kansas City Court of Appeals, November, 9, 1885.**

1. Assignment—Dominion Over Property Prior to and After.—It is only where a man loses dominion over his property, and transfers that dominion to another, that the rights of creditors to a *pro rata* dividend attaches. Whilst a man retains dominion of his property he may incumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors by payment and transfer as he chooses.

2. Evidence—Separate Instruments Executed Contemporaneously—How Construed.—Where two instruments are executed at the same time, between the same parties, relative to the same subject matter, and to effectuate one object, they are to be taken together. But where two deeds are given to different persons, for different considerations, not executed at the same time nor relative to the

same subject matter, nor to effectuate the same object, they will be considered and take effect as separate instruments.

3. ASSIGNMENT LAW OF MISSOURI—SCOPE OF SECTION 354 OF THE REVISED STATUTES.—The statute of this state is founded upon an entirely different base from a bankrupt law, and goes no further than to forbid preferences in and by the instrument by which the debtor surrenders to his creditors all dominion over his property ; and a distinct and special transfer by a debtor, *before he has surrendered* such dominion, even though in contemplation of a general assignment, is valid, and within the statute.

4. —— MORTGAGE CREDITOR MAKING CLAIM OF ASSIGNEE—ESTOPPEL.—Where a mortgage creditor of the assignor presented his claim so secured for allowance before the assignee, but distinctly claimed in writing at the time, that he claimed the benefit of his security, and would assert it in the courts independently of the assignment property and funds, and subject to this asked allowance of his claim. This does not estop him from claiming against the assignment and under the mortgage.

APPEAL from the Pettis Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

Statement of case by the court.

On June 18, 1881, plaintiff instituted a suit by attachment against defendant, and a certain stock of goods was seized under the attachment. On September 13, 1881, in this attachment suit, Sampson filed his interplea, claiming as his the property attached, by virtue of a chattel mortgage executed on said property, on June 13, 1881, by defendant, Hanbloom.

On September 14, 1881, Shaw filed his interplea in this suit, claiming the attached property by virtue of a deed of assignment made to him by defendant, Hanbloom on June 14, 1881. The deed of assignment was in the usual form of all the defendant's property, and was made for the benefit of all the creditors of defendant.

By agreement of parties, the two interpleas were tried together by the court without the intervention of a jury. It was admitted that the assignee received prop-

erty to the amount of fourteen dollars only outside of the property in controversy.

For Shaw the court declared the law to be :

" 1. . If the court finds that the mortgage to Sampson and the deed of assignment to Shaw were both made under a common understanding between Hanbloom and the mortgagee, that Hanbloom was to make the assignment, and that he intended to prefer Sampson in the distribution of his effects, and that for that purpose and with that intention, Hanbloom and the mortgagee made and received the mortgage, to be followed by the assignment, and that the two deeds were so made to avoid the law prohibiting preferences in assignments, then all said acts were to be regarded as parts of one transaction, and the said mortgage has no effect to give Sampson a preference over the other creditors, and the claim of the assignee to the property in controversy must prevail."

The court found the issues presented by the interpleas in favor of Shaw and against both the plaintiff and the interpleader, Sampson. From the judgment of the circuit court Sampson only has appealed to this court.

F. A. SAMPSON and E. J. SMITH, for the appellant.

I.   There was no evidence to support the *first* declaration of law given for Shaw.

II.   If there was such evidence that declaration is erroneous ; and it was error to refuse instructions two and three asked by Sampson. *Greely v. Reading*, 74 Mo. 309 ; *Shelley v. Booth*, 73 Mo. 74 ; *Nash v. Norment*, 5 Mo. App. 545 ; *Forrester v. Moore*, 77 Mo. 651.

III.   It was error to refuse Sampson's fourth instruction, declaring that as to the three hundred dollars exemption to Hanbloom, he, Sampson, was entitled to it ; and it was error to permit the withdrawal of Hanbloom's application for exemption.

IV.   The question of possession cuts no figure one way or the other in the case. *State ex rel., etc., v. Cooper*, 79 Mo. 464.

William S. Shirk, for the respondent.

I.   There was ample evidence to support the *first* instruction given for Shaw.   It correctly states the law as applicable to this case.   That the deed of assignment and the mortgage to Sampson, if contemporaneous documents, and made to effectuate a single purpose, must be read together, hardly requires a citation of authorities. 2 Parsons on Cont. (5 Ed.) 553, and cases cited.   *Brownlee v. Arnold*, 60 Mo. 79 ; *Copeland v. Yocum*, 38 Mo. 349 ; *Donovan v. Duinnng*, 60 Mo. 441.

II.   Under section 354, Revised Statutes, the assignment stands, but the preference given to Sampson by means of his mortgage is void.   *Crow v. Beardsley*, 68 Mo. 435.   The authorities cited by appellant and the declarations of law asked by him are wholly inapplicable.

III.   There was no error in refusing Sampson's fourth instruction.   His mortgage was to avoid the provisions of the statutes of assignment against preferences, and he took nothing under his mortgage, and stood as any other creditor under the assignment.   Therefore, the withdrawal of Hanbloom's claim for exemption could not injure him ; it was the personal privilege of Hanbloom to claim his exemption, and no one else could do it for him. *Osborne v. Schutt*, 67 Mo. 712.

IV.   Sampson is *estopped* from claiming the property as against Shaw, the assignee.   He presented his claim for allowance to the assignee, and it was allowed. He cannot claim against the assignment, and at the same time claim the benefit of such assignment.   *Valentine v. Decker*, 43 Mo. 583.   Nor does his claim, that he will look to his security, help him.   *Frierson v. Branch*, 3 Cent. Law Journal, 334 ; *Jones v. Pickard*, 1 N. E. Rep. 741.   He must make his election, and either take *under it*, or disclaim it.   *Valentine v. Decker, supra*.

Hall, J.—There was sufficient evidence upon which to found the declaration of law given by the court for

Shaw.   Thus the first question for our consideration is : Does that declaration of law, abstractly considered, contain a correct statement of the law ?

## I.

Section 354, of the Revised Statutes, provides that, "Every voluntary assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims ; and every such assignment shall be proved or acknowledged   *   *   * ."

Under this statute no preference of any creditor can be made by a voluntary assignment ; and a provision in a deed of assignment making such a preference is null and of no effect.   *Crow v. Beardsley,* 68 Mo. 437.

In favor of the action of the trial court, in giving the above declaration of law, the respondent, in effect, reasons about as follows :   The obvious intention of the statute is to secure the equal distribution of the effects of insolvent debtors, not exempt from execution among all their creditors, in proportion to their claims.   Preferences in the act of assignment cannot be given.   When, therefore, a debtor, in contemplation of an assignment under this statute, shall determine upon a distribution of his estate among his creditors, and, in execution of such contemplated assignment and determination, and for the purpose of giving a preference to a certain creditor over the other creditors, shall transfer to such preferred creditor distinct portions of his estate, and then assign the residue thereof to his general creditors, though the different instruments may not bear the same date or be executed at the same point of time ; if they are executed in pursuance of an original design, contemplated and determined upon in the beginning, they will be deemed in law one transaction ; a transaction consisting of a series of acts, intended to produce one result, to-wit, the distribution of the debtor's estate among his creditors.   If, therefore, the transaction when fully executed, as origin-

ally contemplated and determined upon, makes a preference in favor of a certain creditor, the preference is invalid, just as it would have been invalid had it been made in the deed of assignment.

In support of the respondent's position and reasoning, there are not a few courts of high standing. *Berry v. Cutts*, 42 Ill. 447; *Van Patten & Marks v. Burr*, 52 Iowa 519; *Bassett et al. v. Herman*, 5 McCrary 269, 272; s. c. 16 Fed. Rep. 812; *Kellogg et al. v. Root et al.*, 23 Fed Rep. 525; *Heineman v. Hart*, 20 N. W. Rep. 792.

In most of the above cases, *Perry v. Holden* (22 Pick. 275) opinion by Shaw, C. J., is cited as an authority for the opinions therein delivered.

On the other hand, "It is settled that the insolvent has the right, while his property remains in his own hands, to apply the same to the payment of one creditor in preference to another, notwithstanding the principle of this court, that equality among creditors is equity." *Wakeman v. Grover*, 4 Paige 23. And, "It is only when a man loses dominion over his property and transfers that dominion to another, that the rights of creditors to a *pro rata* dividend attaches. Whilst a man retains dominion of his property he may incumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors by payment and transfer as he chooses. And if it were not so, an individual could not get along in his business." *Blakey's Appeal*, 7 Barr. 449; *Lampson & Powers v. Arnold*, 19 Iowa 484.

"It is indeed true, that where two instruments are executed at the same time, between the same parties, relative to the same subject matter, and to effectuate one object, they are to be taken together; but where two deeds are given to different persons, for different considerations, not executed at the same time, nor relative to the same subject matter, nor to effectuate the same object, nor in pursuance of a contract made by the grantees jointly, they will be considered and take effect as separate instruments. To this extent, and no further, the cases cited go. There is nothing in common between these in-

truments, except the property conveyed. The mortgage was first in point of time; then the deed of assignment. They are not between the same parties. *Daniel Bates, Parsons Coe and Benjamin Baldwin* are the mortgagees; and *Daniel Bates and Parsons Coe* are the assignees. The mortgage is conditional, to secure debts and against liabilities, the assignment is absolute, to pay creditors. It is beyond comprehension that these instruments, in their nature and object thus diverse, should be deemed part of the same transaction." *Bates v. Coe*, 10 Conn. 293; and to the same effect is *Lampson & Powers v. Arnold, supra.*

We think that our statute is founded upon an entirely different base from a bankrupt law; and that it goes no further than to forbid preferences in and by the instrument by which the debtor surrenders to his creditors all dominion over his property; and that a distinct and special transfer by a debtor before he has surrendered such dominion, even though in contemplation of a general assignment, is valid and not within the statute. *Meredith Manufacturing Co. v. Smith*, 8 N. H. 348; *Low v. Wyman*, 8 N. H. 536; *Barker v. Hall*, 13 N. H. 298; *Brown v. Foster*, 2 Metc. 152; *Henshaw v. Sumner*, 23 Pick. 446; *Fairbanks v. Haynes*, 23 Pick. 323; *Bates v. Coe*, 10 Conn. 280; *Wounan v. Wolfersberger's Executors*, 19 Pa. St. 59; *Lampson & Powers v. Arnold*, 19 Iowa 481.

As said in *Shapleigh v. Baird* (26 Mo. 326): "Indeed, if the legislature wish to strike at the root of the evil, they must go back to an old principle of the common law which permits a debtor to prefer one crediter to another, and which privilege can be effected in a variety of modes other than referred to in our statutes concerning assignments."

This our legislature have not done, in our opinion.

The first and leading case, upon which most if not all of the cases sustaining respondent's position depend, is the case of *Perry v. Holden* (22 Pick. 275). That case, however, was an exceptional case, and as afterwards ex-

plained by Shaw, C. J., who wrote the opinion in it, in
*Fairbanks v. Haynes* (23 Pick. 323), and *Brown v. Fos-
ter* (2 Metc. 152), it is not an authority in favor of the
views expressed in those subsequent cases; but upon the
whole it is an authority for the views herein expressed,
considering the differences between the Massachusetts
statutes and our statute. Our statute does not prevent
a creditor from obtaining a preference by attachment or
other legal process; and it is impossible for us to see any
reason in holding that it prevents the debtor from volun-
tarily giving such a preference. In the one case the fact
that the debtor was about to make an assignment would
not prevent the creditor from securing a preference; in
the other case such fact would not deprive the debtor of
the privilege of giving such preference.

There is an irreconcilable conflict between the cases
cited herein, but reason seems to us to be in favor of the
views expressed by us.

## II.

On the 17th day of August, 1881, F. A. Sampson pre-
sented the notes, secured by the mortgage, to Shaw, as
assignee for allowance. In so presenting the notes, Samp-
son, in writing, set out the facts, that Hanbloom had exe-
cuted the mortgage to secure the payment of the notes,
and had given him, Sampson, possession of the said
stock of goods, and that afterwards the said stock of
goods was taken from his possession under the attach-
ment; and then Sampson, in that connection, used the
following language: "That the validity of said mort-
gage has not been tested in the courts, but will be, and
should it be decided in favor of said Sampson, the above
notes will be paid off in full without calling on any funds
in the hands of the assignee, *otherwise* he presents said
claims to be allowed and paid as other claims." It does
not appear from the record whether or not the notes were
allowed by the assignee. The trial court tried the case
on the theory expressed in the declaration of law given
for Shaw, and did not consider the matters discussed

under this point. But the respondent contends that Sampson by presenting said notes for allowance, as above stated, elected to claim under the assignment, and became estopped from claiming against the assignment and under the mortgage, and that, therefore, the judgment of the circuit court is for the right party and should be affirmed.

It is established law, that "no man can be permitted to claim inconsistent rights with regard to the same subject, and that anyone who claims an interest under an instrument is bound to give full effect to that instrument as far as he can ; a person cannot accept and reject the same instrument, or having availed himself of it as to a part, defect its provisions in any other part ; and this applies to deeds, wills, and all other instruments whatsoever." Leading cases in equity : 1 Hare & Wallace, 303, notes ; *Valentine et al. v. Decker*, 43 Mo. 583.

It is certain that Sampson cannot claim under both the mortgage and the assignment. The rights given by the mortgage and the assignment are inconsistent. It is equally clear from the statement made by Sampson, in presenting the notes to the assignee for allowance, that he intended to and did claim those inconsistent rights. But can it be said that by so doing he elected to claim under the assignment? He expressly stated his rights under the mortgage ; the fact that those rights would be contested in court, presumably by the assignee ; that if he, Sampson, should succeed in maintaining those rights the notes would be paid ; and that "otherwise he presents those claims to be allowed and paid as other claims." This conduct, it seems to us, was sufficiently plain and unequivocal to constitute an election by Sampson, but an election to claim under the mortgage rather than an election to claim under the assignment. He, of course, did claim a right under the assignment, provided he should lose his rights under the mortgage, but his clearly expressed purpose was to first assert and contend for his rights under the mortgage. Having so elected he was not entitled to an allowance of the notes by the assignee.

For these reasons the judgment of the circuit court is reversed and the cause is remanded. Philips, P. J., not sitting. Ellison, J., concurs.