BUTLER BROS. *et al.*, Appellees, v. J. W. DIDDY, Sheriff, Appellant.

Chattel Mortgage: INSOLVENCY: PREFERRING CREDITORS. Where an insolvent debtor, at the instance of an attorney for a mercantile agency, executed several mortgages upon his stock of merchandise to as many different creditors, without their knowledge, and upon the same day, for the purpose of securing a *bona fide* indebtedness, and such creditors upon being notified of the debtor's action by telegraph immediately accepted the security, and the attorney thereupon entered into possession of the property on behalf of such mortgagees, *held*, that the mortgages did not constitute a general assignment for the benefit of creditors, and, therefore, void because of preferences.

*Appeal from Dallas District Court.*—HON. A. W. WILKINSON, Judge.

THE plaintiffs, four in number, each brought an action to recover certain goods, or their value, by virtue of certain chattel mortgages. The causes were, by agreement, consolidated for trial, and judgment entered for the plaintiffs, from which the defendant appeals. *Affirmed.*

*Cardell & Nichols* and *R. S. Barr*, for appellant.

*White & Clark* and *H. A. Hoyt*, for appellees.

GRANGER, J.—The facts and conclusions upon which the district court based its judgment appear in an opinion, or what in the record is designated a "finding of facts," as follows:

"Finding by the court: These plaintiffs each bring separate suits against the defendant, each claiming the goods in controversy under and by virtue of certain mortgages executed to them by one Alexander Boyle, the owner of said goods, and claiming they were in possession of said stock of goods under their several mortgages prior to and at the time said goods were taken by the defendant, and they now claim to be entitled to the possession of said goods. The defendant claims that he is sheriff of Dallas county, Iowa, and that as such sheriff he levied on said stock of goods under and by virtue of certain writs of attachment then in his hands. He denies the validity of the mortgages under which possession of said goods is claimed by plaintiffs, and alleges that said mortgages are fraudulent and void; that, by the execution of said mortgages by said Alexander Boyle, a general assignment was intended, or that the transaction was, in effect, an assignment; and that the same is invalid because certain creditors were therein preferred. By agreement of all the parties in open court, these several causes

were heard, tried and determined together, upon the evidence introduced herein, and the same is to be tried as an equity cause. The facts established in this case by the proof, and found by the court, are substantially as follows:

"In December, A. D. 1888, and for some time prior thereto, one Alexander Boyle was and had been engaged in Perry, Iowa, in the business of keeping a novelty notion store. He was, on the date aforesaid, indebted to a number of firms, from whom he had purchased goods for his said store. Among the creditors were these plaintiffs and the attaching creditors herein. The firm of Goldsberg Bros. & Co. held a claim of nearly one hundred and sixty dollars against said Boyle, which was on the date aforesaid in the hands of H. H. Cardell for collection. That on the twenty-seventh day of December, A. D. 1888, said Alexander Boyle was indebted to the firm of Butler Bros. for goods purchased from them for his said store in the sum of one hundred and forty dollars, and, for the purpose of securing the same, he executed to the said Butler Bros. the mortgage under which they claim the goods in controversy. That on said last-named day, to-wit, December 27, A. D. 1888, the said Alexander Boyle was then and there indebted to said Charles Schmidt for goods purchased from him for his said store in the sum of one hundred and seventy-three dollars and forty cents, and, for the purpose of securing the same, he executed to the said Charles Schmidt the mortgage under which he claims the goods in controversy. That on the date aforesaid, to-wit, December 27, A. D. 1888, the said Alexander Boyle was then and there indebted to said C. M. Linnington for goods purchased for his said store in the sum of one hundred and thirty-five dollars and forty-two cents, and, for the purpose of securing the same, he executed to the said C. M. Linnington the mortgage under which he claims

the goods in controversy. That each of said mortgages was filed for record in the recorder's office of Dallas county, Iowa, on the said twenty-seventh day of December, A. D. 1888, at 10:15 o'clock P. M. That on the twenty-eighth day of December, A. D. 1888, said Alexander Boyle, then and there being indebted to the said firm of George White & Co., for goods purchased for his said store in the sum of forty-three dollars and fifty cents, did, for the purpose of securing the same, execute to said George White & Co. the mortgage under which he claims the goods in controversy, which said mortgage was filed for record on the same day. On the morning of December 29, A. D. 1888, H. A. Hoyt, who was then acting as attorney for plaintiffs, with the mortgages in suit in his possession, and under said mortgages, took possession of the stock of goods so mortgaged to plaintiffs by said Boyle, the same being the goods in controversy; and that said Hoyt, in taking possession of said stock of goods, was acting under the express orders and directions of these plaintiffs; and he took possession of said stock of goods under the mortgages aforesaid prior to the levy of said writs of attachment by defendant; and said Boyle was so in the possession of said goods at the time the same were levied upon by the defendant under said writs of attachment. At the time of the taking of the mortgages aforesaid, said H. A. Hoyt was attorney for the R. G. Dunn Collection Agency and for the Wilber Mercantile Agency. That said mortgages were executed by said Boyle to plaintiffs at the request of said Hoyt. That at the time of the execution of said mortgages said Hoyt did not have for collection the claims secured thereby, but the said plaintiffs, immediately upon the taking of said mortgages, were by said Hoyt notified by telegram of the taking of said mortgages, and the purpose thereof, and his said acts in the taking of said mortgages were at once ratified and adopted by the said

plaintiffs. That, as to the mortgage of George White
& Co., the said Hoyt was authorized and directed by
the said George White & Co. to take said mortgage and
secure their claim, prior to the taking of the same by
him. That the several claims for which said several
mortgages were given were each a valid and subsisting
indebtedness in favor of said several plaintiffs, and
against said Alexander Boyle, at the time of the execu-
tion of said mortgages, and that said mortgages were
executed for the purpose of securing said several claims,
and no general assignment was intended by the parties
thereto, and each of said plaintiffs were at that time
*bona fide* creditors of said Alexander Boyle to the
several amounts expressed in said several mortgages;
and said transaction in the execution of said mortgages
was not, in effect, a general assignment. That, after the
commencement of these several actions, the said J. W.
Diddy was, by order of this court, appointed receiver of
said stock of goods in controversy; and that, as such
receiver, under the orders of this court, he sold said
stock of goods for the gross sum of nine hundred and
fifty-four and seventy-five-hundredths dollars, which
was the fair and reasonable value of said stock of goods
at said time. That the amount paid out by said
receiver upon prior liens and expenses of his receiver-
ship was three hundred and twenty-seven dollars and
seventy-five cents. That the net proceeds from the
sale of said stock of goods was and is six hundred and
twenty-seven dollars.

"Having found the foregoing facts, it is clear there-
from that in this case the plaintiffs should recover. It
is clear from the proof in this case that said mortgages
were executed and recorded, and that Hoyt, who was
acting for said plaintiffs, was in possession of the stock
of goods in controversy thereunder prior and at the
time the defendant took possession thereof under said
writs of attachment. Therefore, before the defendant

can defeat the plaintiffs' recovery in this case, it is incumbent upon him to establish that said mortgages are invalid on the grounds of fraud, or that the said transaction was, in effect, an assignment for the benefit of creditors, and invalid because not made for the benefit of all, and because preference was given to certain creditors. To my mind, the evidence does not so establish the invalidity of said mortgages. It is conceded in this case that no general assignment for the benefit of creditors is valid, under our Code, unless made for the benefit of all the creditors of the insolvent making the assignment. Our Code, section 2115, provides an insolvent debtor has the right to transfer all his property in the actual payment of a pre-existing debt, and such transfer is not fraudulent *per se*, even though the transferee may have knowledge of other creditors, and of the insolvency of the debtor, and such transfer, unaccompanied by actual fraud, is valid as against other creditors of the insolvent. *Cowles v. Rickets*, 1 Iowa, 582; *Lampson v. Arnold*, 19 Iowa, 479; *Southern White-Lead Co v. Haas*, 73 Iowa, 399; *Aulman v. Aulman*, 71 Iowa, 124. The statute providing that no general assignment for the benefit of creditors shall be valid, unless made for the benefit of all the creditors, applies only to general assignments, and the same does not apply to other conveyances. *Lampson v. Arnold*, 19 Iowa, 479. The execution of mortgages by an insolvent debtor, with the *bona fide* intention of securing particular creditors, does not operate as a general assignment for the benefit of creditors. *Farwell v. Jones*, 63 Iowa, 316; *Aulman v. Aulman*, 71 Iowa, 124; *Lampson v. Arnold*, 19 Iowa, 479; *Farwell v. Howard*, 26 Iowa, 381; *Kohn v. Clement*, 58 Iowa, 589; *Gage v. Parry*, 69 Iowa, 605.

"Our supreme court has uniformly held that, where mortgages were given in good faith, with the intention of securing creditors to whom they were exe-

cuted, a different character than what was intended by the parties should not be given to them. Whether such mortgage should be considered an assignment, and void, because not for the benefit of all the creditors, depends upon the intent with which it is made. If mortgages are executed, not with an honest intent to secure a valid indebtedness, but for the purpose of hindering and defrauding creditors, the same is invalid on account of the fraudulent purpose with which the same are executed. Where an insolvent executes a mortgage or mortgages not for the purpose and with the intent to secure a pre-existing indebtedness, but intending the same in fact for an assignment of all his property, divesting himself thereby of the title to all his property, and where the same is made in view of insolvency, such conveyances should be treated as an assignment. But where an assignment is not intended by the parties to the transaction, and the intention is only to secure a pre-existing indebtedness in such case, the instrument is a mortgage, and should be treated as such, even though all the property of the debtor is taken and he is left insolvent, and there are other creditors who have not been secured. Such is the rule in this state as I interpret our decisions.

"Counsel for the defendant rely upon *Burrows v. Lehndorff*, 8 Iowa, 96, and they urge that case as decisive of this one, and it may be conceded that in many respects the facts are similar. But in that case it will be observed that the mortgages were not executed in good faith as security. They were executed by the insolvent to several creditors without their knowledge or consent, and without in any manner consulting them; and it does not appear in that case that any of the creditors to whom the mortgages were so executed ever ratified the acts of the debtor, or accepted the mortgages. Indeed, the plaintiff, in that case, was one of the mortgagees, and he refused to accept the

mortgage which was executed to him. In that case it was plain that the mortgages were not executed in good faith, with an honest intent of securing creditors. While in the case under consideration, Mr. Hoyt positively testifies that the mortgages were not executed on the instance or upon the motion of the debtor, but that, on the contrary, he, acting for the collection agencies hereinbefore named, by urging on his part, induced the debtor to execute the mortgages as security for the indebtedness named therein. I do not overlook the fact that Hoyt got his information with reference to these claims from the debtor and his brother-in-law, Mr. Murray. While that is true, yet Hoyt was attorney for those collection agencies, and had authority to act for them. These plaintiffs were members of one or both of said agencies, and, upon being notified by Mr. Hoyt of his acts in the taking of this security, they promptly ratified his acts, and accepted the said mortgages.

"In *Wise v. Wilds*, 77 Iowa, 586, it will be observed that that transaction was held fraudulent and void. It was found by the trial court that the transaction was fraudulent, and that the instruments were not executed as security, and it was held in that case that there was evidence to sustain that finding, and, if the instruments were fraudulent, they were void if they were not executed to secure an indebtedness. If that was not the intention of the grantor, then that meaning should not be given to them. The establishing of either of these two facts would, of course, defeat the instruments. The case of *White v. Cotzhausen*, 9 Sup. Ct. Rep. 309, does not differ in principle from *Burrows v. Lehndorff*. In that case the transaction was not sustained, because, as therein stated, the same was 'in execution of a scheme for the appropriation of his entire estate by his family, to the exclusion of other creditors.'

"Under the evidence in this case, I cannot find that the mortgages are fraudulent. While it is true that some of the conduct on the part of Hoyt and Boyle gives rise to the suspicion that there was an effort upon their part to secure these plaintiffs in preference to the firm of Goldberg Bros. & Co., yet the facts would not warrant a stronger construction than that. In order to establish fraud, the evidence must do more than that. In order to establish fraud the evidence must do more than create a mere suspicion. When the facts constituting a transaction are consistent with an honest purpose and intent, that construction must be given them. The transactions of every man are presumed to be honest, and fraud is not considered proven until the transaction has been shown to be inconsistent with an honest purpose and intent. In view of these rules, from the evidence in this case, I do not hesitate in coming to the conclusion that the fraud alleged by the defendant has not been established, and, in the absence of fraud, with the positive evidence that these mortgages were executed for the purpose of securing these several debts, they without doubt ought to be sustained.

"I have devoted more time to the consideration of this case than usual, because it appeared that counsel on both sides had made careful preparation, and it seemed to me that each was positive that his conclusions were correct, and each fortified his convictions with an abundant authority, and I have endeavored to show herein the reasons for reaching the conclusions arrived at by me in this case. The parties to this suit having, in open court, agreed that these four cases should be tried together as an equity cause, it is, therefore, ordered that the receiver, with the funds in his hands arising from the sale of the property in controversy, first pay off his legitimate expenses as such receiver; that he next pay off the landlord's lien; that

he next pay off these four several mortgages of plaintiffs, including the costs of these several causes; and that decrees be entered in accord with these findings; to all of which findings of fact and conclusions of law both the plaintiffs and the defendant at the time duly excepted.                    A. W. WILKINSON,
                                        "Judge."

The record, to our minds, fully sustains the findings of fact, and we concur in the conclusions of law as applied thereto.  As a result, the judgment below must be AFFIRMED.