KING v. GUSTAFSON *et al.*

80 207
d90 346

**Assignment for Benefit of Creditors:** WHAT IS IN EFFECT: VOID FOR PREFERENCES: ESTOPPEL. Where a firm conveyed all its property to plaintiff, a creditor, with authority to him to sell the same as he might see fit, and to apply the proceeds as follows: *First*, to pay taxes and rents; *second*, to pay insurance; *third*, to pay expenses of sale; *fourth*, to pay notes due plaintiff; *fifth*, to pay notes due a certain bank; *sixth*, to pay the residue, *pro rata*, to the other creditors, *held* that the transaction was an assignment for the benefit of creditors, and that it was void as such because of preferences, and that the character of the transaction was not changed by the fact that the firm, the next day, gave to the plaintiff and to the bank, severally, chattel mortgages, in the ordinary form, to secure its indebtedness to them; nor was the bank, by accepting its mortgage, estopped from levying an attachment on the goods, because the firm had nothing to convey when the mortgages were made; and plaintiff could not by virtue of his mortgage, which was the prior one, recover the property from the attachment.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

FILED, MAY 21, 1890.

FROM the spring of 1884 to about December 10, 1886, the firm of Eiker & King was engaged, in Ft.

Dodge, Iowa, as furniture dealers. The plaintiff was the father of one member of the firm, and father-in-law of the other. On the tenth day of March, 1884, the firm gave to the plaintiff its note for three thousand dollars; and on the eighteenth day of June thereafter it gave its note for one thousand dollars. On the eighth day of December, 1886, the firm executed to the plaintiff the following instrument, which, because of its importance in the case, is set out in full.

"Know all men by these presents, that we, S. H. Eiker and E. E. King, and Eiker & King, a copartnership comprised of the above-named S. H. Eiker and E. E. King, have sold, and do hereby convey, unto Geo. W. King, of the city of Fort Dodge, Webster county, Iowa, all the following described property : All the goods, wares and merchandise, of every kind and description constituting and included in the stock of furniture and business heretofore carried on by the said parties of the first part, under the firm name and style of Eiker & King, in Doud's building in Market street, in Fort Dodge, Iowa,—the intent being to include and convey by this instrument all mouldings, furniture, upholstered and undertaker's goods and mattresses, bed furniture, curtains, window hangings and fixtures, and each and every article, item and thing included in said stock, and used and kept for sale in carrying on said business; also, the safe, office and store furniture, delivery wagon, and horses, hearses and fixtures and furniture belonging thereto; also all tools, material, stock, timber, paint-shop furniture and machinery, and each and every article used and kept on said premises and belonging to said business, and used in carrying on the same; also all book-accounts and books of account due said firm of Eiker & King. And we hereby authorize him, the said Geo. W. King, to collect and receipt for all sums due, or to become due, on said accounts and books, in our names or his own, as he may prefer. And we hereby authorize him, the said George W. King, to take immediate, actual possession of said property, and to

assume immmediate, actual control thereof, and to proceed to sell the same, and the whole or any part thereof, at private or public sale, at wholesale or retail, with or without notice, as he may see fit, and as in his judgment may seem best, and out of the money arising from said sale, and out of the proceeds of said property, and the sums collected on said accounts, to pay the parties and persons hereinafter named, said sums to be paid in the order named: *First.* All taxes on said property, and all rent for the premises where the same is kept. *Second.* All insurance thereon. *Third.* All expenses of sale, including desk hire, and other assistance and help that may be required. *Fourth.* All sums due him on certain promissory notes made by Eiker & King to the said Geo. W. King,—one note being for three thousand dollars, dated March 10, 1884, the other for one thousand dollars, dated June 18, 1884; each of said notes being due on demand and bearing interest at the rate of eight per cent. *Fifth.* To pay to the Fort Dodge National Bank, of Fort Dodge, Iowa, all moneys due, or to become due, on notes held by said bank against said Eiker & King; said notes now aggregating about three thousand dollars. *Sixth.* All moneys arising from said stock, goods, property or accounts, in excess of the sum necessary to pay the claims and items hereinbefore set forth, shall be divided among, and paid over to, the other creditors of said firm of Eiker & King in proportion of the amount of their respective claims. It is intended to be included in the third item a reasonable compensation for any and all services rendered by said Geo. W. King personally in the premises, and all expenses or costs incurred for counsel and attorneys' fees, or costs of any description, in carrying out this contract. This contract is made for a valuable consideration, the receipt of which we do hereby acknowledge.

" S. H. EIKER,

" E. E. KING,

" EIKER & KING.

" By S. H. EIKER."

The property described in the above instrument was the entire property of the firm, and was at once taken possession of by the plaintiff. On the ninth day of December, 1886, the firm executed to the plaintiff, to secure the notes held by plaintiff, a chattel mortgage on the same property. On the same day, December 9, the firm also executed to the defendant bank a chattel mortgage on the property to secure its claim ; the mortgage to the bank being junior to that of plaintiff. December 10, the bank, through the agency of the defendant sheriff, by virtue of an attachment, seized all the property held by the plaintiff, and retains the same under legal proceedings to enforce the payment of its claim. The plaintiff brings this action, alleging the seizure of the property by the bank to be wrongful, and asking to recover the value thereof. The answer presents numerous defenses, and among them that the conveyance of the property by virtue of the instrument above set out was an assignment for the benefit of creditors, with preferences, and that the mortgage executed thereafter to the plaintiff is void. The district court gave judgment for the defendants upon such issues, and the plaintiff appeals.

*A: E. Clark*, for appellant.

*M. D. O'Connell* and *A. N. Botsford*, for appellees.

GRANGER, J.—The proposition is that the instrument executed December 8, and set out in the statement, considered without reference to the mortgage made to plaintiff the day following, must, under the authorities, be regarded as an assignment for the benefit of creditors. There are so many instances in which instruments, denominated "bills of sale" and "mortgages," are held to be assignments, where the effect of the transaction is that of an assignment, that the right to do so is no longer an open question. Barring the preferences on the face of the instrument in this case, it is difficult

to imagine the absence of a requirement of such an assignment, or the presence of a sentence indicating any other purpose. It conveys the entire property of the firm. It conveys it absolutely, with full powers of disposition and conversion by the trustee; and, barring expenses, it is all for the benefit of creditors. The law treats such a transaction as an assignment for the benefit of creditors. *Bonns v. Carter*, 20 Neb. 566; 31 N. W. Rep. 381; *Wallace v. Wainwright*, 87 Pa. St. 263; *Harkrader v. Leiby*, 4 Ohio St. 602; *Dickson v. Rawson*, 5 Ohio St. 218; *Page v. Smith*, 24 Wis. 368; *Norton v. Kearney*, 10 Wis. 386; *Burrows v. Lehndorff*, 8 Iowa, 96; *Van Patten v. Burr*, 52 Iowa, 518. In *Rubber Co. v. Falley*, 30 Fed. Rep. 808, the court, speaking of the instrument of conveyance in the case, uses this language: "An assignment, however, by which a debtor vests in a trustee all his property for the benefit of all * * * his creditors, is neither a sale, a mortgage, nor a sale in the nature of a mortgage. Such an instrument absolutely appropriates the property thus conveyed, beyond the control of the debtor, to the payment of his debts. No title, legal or equitable, remains in him." The especial claim of appellant in this case is that there is a defeasance which changes the character of the transaction, and shows that it was not the intention to make the assignment. This defeasance, if it exists, is by virtue of the chattel mortgage made the next day. Many authorities are cited to show that a single transaction may consist of separate acts, and be evidenced by different instruments; and the correctness of the proposition could not well be questioned, nor in this case do we see a necessity for it. It is impracticable to set out the testimony or the facts in detail, but we will call attention to enough to illustrate our views of the case.

As showing what is claimed as the intention of the firm and plaintiff in making the instruments, we will state that, before either was executed, they all went to

the office of the attorney who drew the papers, and while there considerable talk was had as to the best plan of securing the plaintiff; and such security appeared to be the main purpose of their presence; in fact, the only purpose of going there. It seemed desirable, after security was given, that the plaintiff should proceed to sell the goods, and the firm had in view again opening up their business. To meet this the feasibility of a chattel mortgage was talked, and also a bill of sale with a defeasance. During the conversation one member of the firm thought and suggested that the defendant bank should also be secured, and the conversation led to the propriety of securing all the creditors; and the plaintiff was willing, provided his security was first. As a result of the conversation, the instrument relied upon as the assignment was drawn up late on the eighth of December, and on the following day the mortgage was made. It is stated in evidence that it was understood that the transaction was to be only as security, and that the intention was to continue the business of the firm. Objections were made to much of the testimony on the ground that its effect was to contradict and vary the terms of the written instrument, but we do not think it necessary to rule on these objections. We are, then, to consider the effect of the chattel mortgage on the instrument before executed. If we should divest the record of the parol testimony as to the intent of the parties, and treat the two instruments as so made as to be one transaction, we should still have a case, under the authorities cited, where the transaction would in law be an assignment for the bene-fit of creditors; for it is not an ordinary case of security, where the property is held by either debtor or creditor after the pledge is made, but it is placed in the custody of one of the creditors with trust duties as to other creditors. It is not possible to construe the instruments as being made at the same time, and as one transaction, without giving force to the provision for the general security of creditors. If we should say that the two

instruments together constitute security for the creditors of the firm, and that the property is held by the plaintiff as trustee for such creditors, and that he must apply the property, as directed in the instruments, for the payment of creditors, we should say no more than appellant should concede; for the testimony of the attorney who drew the papers shows that both were drawn after a full understanding was reached, and it could not in reason be that one was designed to supplant the other. The chattel mortgage was in the ordinary form of such mortgages, securing the claim of the plaintiff only, and providing that the money remaining after paying said sums, if any, be paid on demand to said party of the first part. Any claim that it was the purpose of the chattel mortgage to defeat the former instrument or the provisions thereof as to the sale and application of the proceeds of the property, has no support in the record. To carry out the purposes of the firm in giving the security as expressed in the instrument, the trustee must at once take possession of the property, and sell the same, collect the accounts, and pay the money over to the creditors. The manifest design was to sell the property and pay the creditors through the intervention of a trustee. The word "security," in the light of the facts, is unsuited to the transaction, except as it expresses a security resulting to creditors from an assignment. The facts, then, are clearly within the rule of many cases holding that the transaction was an assignment for the benefit of creditors. That the assignment is fraudulent as giving preference to creditors cannot well be questioned.

It is urged that the acceptance by the defendant bank of its mortgage after the execution of the other papers estops it from questioning the validity of plaintiff's security. The difficulty with the position is that after the assignment the firm was divested of all title to the property, and had no authority whatever to give a valid mortgage. The assignment could only be defeated

by a defrauded creditor, and until disturbed by a creditor the assignment was effective.   Hence the mortgage was of no validity, and there was no prejudice to the plaintiff that would sustain an estoppel.

With these views, we are not required to consider other questions in the case, and the judgment of the district court is          AFFIRMED.