YOUNKIN *v.* COLLIER *et al.*, (SMITH, Garnishee.)

*(Circuit Court, S. D. Iowa, E. D.   June 24, 1891.)*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—WHAT CONSTITUTES—MORTGAGES.
   A mortgage executed by insolvents to a trustee to secure certain of their creditors, containing a defeasance in express terms, is not a general assignment, within the meaning of the Iowa assignment law, (Code Iowa, §§ 2115-2128,) although it covers all their available property; and hence it does not come within the operation of section 2115, which invalidates all general assignments not made for the benefit of all creditors in proportion to the amount of their respective claims.

2. GARNISHMENT—LIABILITY OF TRUSTEE FOR CREDITORS—SURPLUS.
   The trustee in such mortgage is not liable as garnishee to a creditor of the mortgagors when it is not shown that a surplus will remain in his hands after payment of the debts secured by the mortgage and the expenses of the trust.

**3. SAME—PROPERTY EXCEPTED FROM TRANSFER.**

Such trustee is not liable to the garnishing creditor for the value of shares of stock belonging to the mortgagors which the terms of the mortgage were broad enough to include, where both parties to the mortgage testify that such shares were not intended to be transferred thereby.

**4. SAME—TRANSFER BY GARNISHEE—STOCK—ATTACHMENT.**

Where the certificates of such stock have come into the possession of the trustee, the fact that, after service of the writ of garnishment, he delivered them to the mortgagors' general assignee, will not render him liable to the garnishor, who has failed to conform to the method prescribed by Code Iowa, § 2967, for attaching stock in a company.

At Law.

Code Iowa, § 2115, relating to general assignments, provides that—

"No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid, unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims."

*John P. Hornish* and *James H. Anderson,* for plaintiff.

*F. T. Hughes* and *James C. Davis,* for garnishee.

SHIRAS, J. From the record in this cause it appears that December 16, 1890, the plaintiff, Joseph Younkin, brought suit in this court, aided by the issuance of a writ of attachment, against Alexander Collier, Hugh Robertson, and B. F. Hambleton, partners under the firm name of Collier, Robertson & Hambleton, the attachment being levied by garnishing J. F. Smith. On or about January 21, 1891, judgment was entered in the main cause against the defendants therein for the sum of $9,963.38 and costs, and, the answer of the garnishee having been duly taken and filed, issue thereon was taken by the plaintiff according to the method provided in the statutes of Iowa, and the questions thus presented are those now before the court for determination. From the evidence submitted by the respective parties, it appears that on and prior to the 10th day of December, 1890, the firm of Collier, Robertson & Hambleton was engaged in the wholesale grocery business at Keokuk, Iowa; that on said 10th of December, 1890, two chattel mortgages were executed by said firm upon the stock in trade, fixtures, notes, accounts, and other choses in action of said firm, to secure payment of the sums due various creditors named in each mortgage, the conveyances being in form to J. F. Smith, trustee; that on the same day said firm executed a mortgage to J. F. Smith, trustee, upon the westerly 40 feet of lot 4, in block 25, in the city of Keokuk, Iowa, to secure the amounts due the creditors therein named; that on the 16th day of December, 1890, the said firm executed a deed of general assignment to J. W. Summers, as assignee, for the benefit of their creditors; that on the 10th day of December, 1890, and prior to the execution of the mortgages above named, the said firm was insolvent; that immediately on the execution of said chattel mortgages the trustee therein named took possession of the personalty therein described, and has since converted the same, or a large portion thereof, into money. On the part of plaintiff, it is contended that the mortgages executed to J. F. Smith, as trustee, in effect covered all the available property be-

longing to the firm of Collier, Robertson & Hambleton, and therefore in fact constituted a general assignment of their property, but, being made for the benefit of a part only of their creditors, it is void under the Iowa statute, because it thus gives a preference to certain creditors, instead of being for the common benefit of all.

Assuming, without so deciding, that the mortgages were intended to cover all the available property of the firm, that fact does not necessarily make them in effect a general assignment, even if the mortgagors were then insolvent, and executed these instruments in view of that fact. The rule of construction to be followed in determining the character of the conveyances in question is that to be derived from the decisions of the supreme court of Iowa. It is not to be denied that if the language used in *Burrows* v. *Lehndorff*, 8 Iowa, 96, is to be construed without limitation, it would justify the contention of plaintiff that these mortgages should be held to constitute a general assignment; but the rule laid down in this case has been greatly limited by the subsequent decisions of the supreme court of Iowa. In *Lampson* v. *Arnold*, 19 Iowa, 479, the whole subject is discussed at length, and the conclusion reached that—

"This statute, it will be observed, does not limit or affect the right of an insolvent debtor, or one contemplating insolvency, or, indeed, any other, to sell or mortgage a part or all of his property to one or more of his many creditors, in payment or security of a particular debt or debts; but this is true, although such sale or mortgage may, practically, defeat all other creditors than the grantee from collecting their demands. Nor does the statute prohibit or interfere with the right of the debtor as it existed before the statute to execute a partial assignment: in other words, the statute does not expressly or by implication extend any further or apply to any instrument or conveyances other than a general assignment, and therefore it is still competent for any debtor to pay a part of his creditors in full, to secure another part by mortgage or deed of trust upon a part of his property, to execute a partial assignment of stock or other property for the benefit of certain other creditors, with or without preference, and afterwards to make a general assignment. The statute simply provides that such general assignment shall not be valid unless it is made for the benefit of all the creditors *pro rata*. * * * Now, the statute does not declare general transfers invalid, but it relates to general 'assignments,' and uses the latter word, as held in *Cowles* v. *Ricketts*, 1 Iowa, 582, in its technical sense."

There is nothing to be found in the subsequent decisions of the supreme court of Iowa which changes the general principles laid down in *Lampson* v. *Arnold*. The point of inquiry is whether, in legal intendment, the instrument of conveyance is to be held to be merely a transfer of property in payment or security, or to be a deed of general assignment. In determining this question, the form of the conveyance has great and controlling weight, although it will be read in the light thrown upon it by the accompanying circumstances and acts of the parties thereto. Thus, if the instrument conveys the property of the debtor absolutely, without a defeasance or right of redemption expressed or implied, it will be construed to be a deed of assignment; but, if the form of the instrument is such that there is reserved to the debtor an interest in the prop-

erty or right of redemption, so that, in effect, it only creates a lien on the property as security for the debts named therein, then ordinarily it will be deemed to be a mortgage, or deed of trust in the nature of a mortgage. *King* v. *Gustafson*, 80 Iowa, 207, 45 N. W. Rep. 565; *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223, 10 Sup. Ct. Rep. 1013.

The instruments executed to J. F. Smith, as trustee, contain a defeasance in express terms, and, under the rule laid down in the authorities just cited, they must be held to be deeds of trust in the nature of mortgages. There is nothing to be found in the acts of the parties or other circumstances which would justify the court in holding them to be, in effect, a deed of general assignment. On the contrary, the acts of the parties interested show that it was not the purpose in executing these mortgages to make thereby a general assignment for the benefit of creditors. It must therefore be held that these instruments are merely mortgages executed for the purpose of securing the debts therein named. This being so, then they are not void because they do not meet the requirements of the statute regulating general assignments in the state of Iowa, nor has there been anything shown in the evidence which would justify the court in holding them void as mortgages as against attaching creditors. It does not appear that there is or will be a surplus left in the hands of the garnishee after paying the debts secured by the mortgages in which he is trustee, and the cost and expenses connected therewith, so that it does not appear that the garnishee is liable for any amount to plaintiff.

It is further claimed on behalf of plaintiff that the garnishee is liable to respond upon the writ of garnishment for the value of certain shares of stock in the Rocky Mountain Smelting Company, it being claimed that these shares of stock were included in the chattel mortgages executed to the garnishee, and that the certificates thereof came into his possession, and that it was his duty to retain the same in his possession, whether included in the mortgages or not, in obedience to the writ of garnishment. It appears from the evidence that the shares of stock in question belonged to the firm of Collier, Robertson & Hambleton, and therefore it may be well said that the terms used in the chattel mortgages are broad enough to include these shares of stock, in that they formed part of the personal property owned by the firm at the date of the execution of the mortgages. It clearly appears, however, from the evidence, that, as between the parties to the mortgages, it was understood that the stock was not to be included therein, and, in pursuance of such understanding, the trustee therein did not assert any claim to the shares of stock, but the same were delivered over to the assignee named in the deed of general assignment executed by the firm some days after the delivery of the chattel mortgages. The court is not now justified in holding that the shares of stock were in fact intended to be included in the mortgages, when the parties in interest therein do not so claim, but in fact aver, by word and deed, that such was not the intent of the parties in executing such instruments.

It is argued, however, that, if this be so, nevertheless the certificates of stock, being in the safe belonging to the firm, passed into the possession of the garnishee, when he took possession of the store and contents under the mortgages, and that, when the writ of garnishment was served upon him, he should have retained in his possession the certificates of stock, instead of permitting the delivery thereof to J. W. Summers, the assignee named in the deed of general assignment. By the service of this writ of garnishment, the plaintiff did not obtain or create a lien upon the shares of stock in question. If the garnishee had retained in his possession these certificates, that would not have prevented the transfer of the title in the shares to the assignee. The deed of general assignment conveyed all the property of the assignors not exempt from execution; and the mere fact that the certificates evidencing their right to the stock were at the time in the safe, which was in the possession of the garnishee, would not defeat the transfer of the title to the assignee. Code Iowa, § 2967, provides a method by which stock in a company may be attached by giving notice to the president, secretary, or other managing officers of the company of the fact of the attachment; and in the case of *Mooar* v. *Walker*, 46 Iowa, 164, the supreme court of the state expressly hold that, "in order to obtain a lien on stock in an incorporated company, and prevent a valid transfer of the same, the creditor must follow the mode pointed out in the third subdivision of said section 2967," etc. As the plaintiff did not follow the mode thus provided for, he obtained no lien by service of the writ of garnishment which would prevent a valid transfer of the shares of stock, and hence the general deed of assignment conveyed the title thereof to the assignee. Under these circumstances, the plaintiff has no claim against the garnishee by reason of the delivery of the certificates to the assignee. It not appearing, therefore, that any ground exists for holding the garnishee liable for any sum to plaintiff, the garnishee is entitled to be discharged, and to judgment for costs against the plaintiff.